**In the Interest of J.M. and G.M., Children, Appellant.**

**No. 16143.**

Court of Civil Appeals of Texas, San Antonio.

July 19, 1979.

Frederick R. Zlotucha, Law Office of A. L. Hernden, San Antonio, for appellant.

Kirk Patterson, Stewart & Hemmi, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is an appeal from an Order to Modify in Suit Affecting the Parent-Child Relationship. A decree of divorce was entered between R.M. and L.M., the parents of the subject children, on September 3, 1976, wherein R.M., their father, was ordered to pay child support for his and L.M.'s two minor children, in the following amounts:

September 15, 1976–January 1, 1977
$250 per month per child, or $500 per month;
January 1, 1977–June 1, 1977
$375 per month per child, or $750 per month;
June 1, 1977–January 1, 1978
$500 per month per child, or $1,000 per month;
January 1, 1978–June 1, 1978
$625 per month per child, or $1,250 per month; and
June 1, 1978, until each child attains the age of eighteen years
$750 per month per child, or $1,500 per month.

In addition, the divorce decree ordered the father to pay for a college education for each of the two children; to provide a piano for the oldest child, when that child reached the age of eight years; to keep in effect all medical insurance coverage for the minor children and to remain responsible for one-half of their medical and dental expenses; to retain all of his life insurance policies in full force and effect, with the minor children to be designated as beneficiaries; and to "pay all tuition costs of schooling for the minor children." The payment schedule set out above, was included in a "Child Support and Community Property Settlement Agreement" signed by the parties and incorporated into the decree of divorce. Under the decree, L.M., the mother, was named managing conservator of the children, and their father was appointed as possessory conservator.

On or about January 1, 1978, R.M. is alleged to have failed to abide by the terms

of the child support agreement, when he refused to make the increased payments ordered in the decree. He did, however, continue to make monthly child support payments of $500 per month per child. Thereafter, on March 6, 1978, he filed a motion to modify, requesting a reduction in child support payments. He also asked that the court set a reasonable amount of child support.

After a hearing on the matter, the court ordered that he pay child support in the sum of $575 per month per child until each child attains the age of eighteen years, or until further orders of the court. The court further ordered that this sum would be the "total amount of support to be paid by the Movant for the support of the minor children at this time," but held that this order did not modify the specific provisions for a piano, expenses for future college education, and maintaining the children as beneficiaries on his life insurance policies.

The children's mother appealed from this order, complaining that it cut off her anticipated automatic increases in child support up to $750 per month per child, and that the tuition payment for the schooling of the minor children should not be considered covered by the $575 per month per child cash payments. She asserts twenty-one points of error in which she basically contends that (1) the trial court erred in granting a reduction in child support payments because there is no evidence, or alternatively insufficient evidence, of any material or substantial change in circumstances since the entry of the divorce decree; (2) there is no evidence, or alternatively insufficient evidence, to support a finding that the movant's financial circumstances had changed; (3) the trial erred in setting aside the prior child support agreement provisions incorporated in the decree of divorce, since that agreement and decree is valid and binding upon the parties; (4) the trial court erred in modifying the tuition payment provisions of the divorce decree; and (5) the trial court erred in modifying the original decree of divorce.

The amount of money that a parent is required to pay for the support of his minor children, both before and after divorce, is based not only upon the needs of the children but upon his financial ability to pay, having due regard to all of his lawful obligations, including those assumed to another spouse and to other children. *See Gully v. Gully*, 111 Tex. 233, 231 S.W. 97 (1921). One is bound to support his children in a manner suitable to their circumstances in life, commensurate, however, with his financial ability to pay for their support. *See Myrick v. Myrick*, 478 S.W.2d 859 (Tex. Civ.App.—Houston [1st Dist.] 1972, writ dism'd); *McAfee v. McAfee*, 258 S.W.2d 824 (Tex.Civ.App.—Dallas 1953, no writ); 21 Tex.Jur.2d *Divorce and Separation* § 387 (1961). The trial court's order will not be disturbed on appeal unless there is a clear abuse of discretion. *See Hearn v. Hearn*, 449 S.W.2d 141 (Tex.Civ.App.—Tyler 1969, no writ); *Brito v. Brito*, 346 S.W.2d 133 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.). While the trial court has wide discretion in fixing the amount of child support payments and while each case must stand on its own facts, the determination of that amount must be supported by evidence that the parent obligated for child support is able to pay, and can pay, the amount specified in the order. *See Anderson v. Anderson*, 503 S.W.2d 124 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Danburg v. Danburg*, 433 S.W.2d 784 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ); *Ramey v. Ramey*, 425 S.W.2d 900 (Tex.Civ.App.—Eastland 1968, writ dism'd); *Angel v. Todd*, 368 S.W.2d 224 (Tex.Civ.App.—Houston 1963, no writ); *Madden v. Madden*, 365 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1963, no writ).

By counterpoint the children's father asserts here that the provisions of the original divorce decree providing for an automatic increase in child support were not based upon the actual needs of the children, but followed instead a prescribed formula based on his anticipated ability to pay, and

were, therefore, unenforceable. We consider this contention to be meritorious.[1]

■ In *Barlow v. Barlow*, 282 S.W.2d 429 (Tex.Civ.App.—El Paso 1955, no writ), it was held that the application of an arbitrary percentage-of-income formula to determine the level of child support was erroneous and violated the rule set out by the Supreme Court of Texas in *Gully v. Gully*, 111 Tex. 233, 231 S.W. 97 (1921). Under *Gully*, the trial court is directed to consider all the circumstances affecting the ability of the supporting parent to pay. This consideration is an ongoing judicial process and does not permit the imposition of a formula to provide automatic increases in support. There must be a material change in conditions to warrant an increase in child support payments, and it is not in the trial court's power to anticipate such changes and provide for them prior to their occurrence.

The facts of *Myrick v. Myrick*, 478 S.W.2d 859 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ dism'd), are close in point to those before us. In that case, a property settlement agreement was incorporated into the divorce decree, in which the divorced husband agreed to pay for the support of his two children $1,100 each month from June 1, 1968, through May 1, 1971; $1,300 each month from June 1, 1971, through May 1, 1973; and $1,500 each month thereafter until the youngest child reached eighteen years of age. This is close to the situation we have before us in this case. The divorced husband there filed a motion to modify, and the trial court entered an order reducing his child support payments to the sum of $600 per month for the period from July 1, 1970, to April 1, 1971. At the end of this period, he was ordered to resume child support payments in accordance with the original decree. At trial the divorced wife testified that she was spending only $300 to $400 each month for the support and education of the children. On appeal, she contended that the trial court lacked the power to reduce the payments required by the divorce decree because this portion of the decree was not only a judgment of the court, but also a contract between the parties.

The court of civil appeals in *Myrick* held that the court granting a divorce has continuing and exclusive jurisdiction to modify and change the provisions of the divorce decree for support of children under the age of eighteen years. The court also found that the parties to a divorce case cannot by contract restrict that authority. The court of civil appeals also held that the power of the trial court to amend the judgment in this respect is not dependent on a showing of changed circumstances.[2]

The facts of the case before us, as in every case involving child support, require the exercise of sound discretion by the trial judge, and not the arbitrary application of any formula. The mother and the father of the children were the only witnesses to testify. Their testimony at best is somewhat vague, often irrelevant, and sometimes evasive. The gist of their testimony is as follows:

The two children involved are a boy, seven years of age, and a girl, four-and-a-half years of age. Their mother, L.M., is employed parttime as a restorer of auto-

1. The child support provisions of the agreement state that it is anticipated that the gross income of R.M., upon which the child support is based, will be $15,000 from September 1, 1976, until January 1, 1977; $50,000 from January 1, 1977, until June 1, 1977; $50,000 from June 1, 1977, until January 1, 1978; $75,000 from January 1, 1978, until June 1, 1978; and $75,000 for each six-month period thereafter. It is evident from this that the automatic increases in child support payments are not based upon actual needs of the children, but rather upon anticipated future income of their father.

2. This Court in *Lynde v. Lynde*, 492 S.W.2d 641 (Tex.Civ.App.—San Antonio 1973, no writ), with respect to showing of changed circumstances, stated "[w]e believe that the continuing jurisdiction of the court granting a divorce to change or alter the amount of child support is correctly stated in *Myrick v. Myrick*, supra." Both this Court and the *Myrick* court stated that it would be a rare case where a change in a previous order would be made without a showing of a change in conditions or some unusual circumstances.

mobile interiors, and testified that her income for the previous year was $2,600. The owner of the business lives with her and her two children, although they are not married. The mother's boyfriend contributes some $300 to $500 per week to support her and the children. They live in an apartment which rents for $550 a month. L.M. had prepared for trial a list of expenditures of herself, her boyfriend, and the two children. She allocated $350 of the monthly apartment rental to the support of her children on some basis which is not exactly explained. She estimated $100 a month for telephone expenses, but her documentation, which covered a four-month period, establishes a need less than this total, but she claimed that the increase in this expense (together with other expenses to which she testified) is justified on the basis of "inflation." She testified that she spends about $1,800 a year for insurance, much of which is for automobile insurance, which she explains is high due to the fact that she is a high-risk driver. She allocates a portion of the cost of such insurance to her children, contending that such portion thereof should be borne by them because "my possessions are eventually my children's possessions." She says she requires $80 per month for ballet and gymnastics lessons for the children, although she concedes that the children are not presently involved in such activities. She allocates either $200, $250, or $300 a month for the children's food without any explanation of how she arrives at these variant figures except that she states that "we do not eat what other people eat"; again she took an inflation factor into consideration on this expenditure. She has a vague allocation for their clothing expenditures; $500 is allocated for "books, birthday gifts, pets [and other] diversions"; $2,000 a year is allocated for travel and for summer camps. It is impossible to arrive at an exact figure as to expenditures for the children from her testimony although they seem to range from a high estimate of $1,462 to a low of $899.

The testimony of the children's father is also imprecise at times. He testified that he is a physician; that he has remarried; that his present wife has three minor children of her own; and that she is not employed. His testimony as to his earnings are a mixture of what he calls gross income and what he calls net income. He testified that the taxable income reflected by his 1976 income tax return was $12,174 and by his 1977 tax return as approximately $54,000, although this was objected to and ultimately the witness was instructed to confine his testimony to gross income.[3]

R.M. testified further that he is unable to pay the present child support payments under the court decree, which provided for automatic increases based upon a formula. It is evident from his testimony that he, like his ex-wife, is accustomed to a somewhat high standard of living. He testified that he did not have enough money remaining out of his take-home income to pay his and his present family's living expenses, plus the child support payments in question, as provided for in the trial court's decree. He stated further that he had to resort to borrowing from his present wife's savings in order to remain current in his obligations. He stated that his anticipated income, upon which the formula provisions of the contract regarding automatic increases in child support are predicated, have not materialized and that he is not making as much money as anticipated by the payment schedule.

---

3. It is somewhat difficult to understand the court's basis for this ruling. The court made it plain that since this was a hearing on a motion to modify the child support provisions of a divorce decree he would refuse to take into consideration the contractual relationship alluded to by counsel for both parties. Since his ability to pay is dependent upon what he is actually making, it would appear that his testimony as to net income, and not gross income, is relevant insofar as he might conceivably have a gross income of $100,000 from his business and still be making very little, if anything.

█ L.M.'s points of error pertaining to modification of the tuition payments are without merit. Such provision was a part of the child support provisions and is subject to the same rules generally applicable to child support payments as already set forth. There is no evidence that any such tuition payments are presently being made, or are even required, except for a statement that her children are going to school, and other vague references by L.M. as to contemplated ballet classes, gymnastic lessons, and summer camp for the children.

█ The trial court had both witnesses before it and was in a position to observe them. The trier of fact was the judge of the credibility of the witnesses and of the weight to be given their testimony. It is his province to resolve conflicts and inconsistencies in the testimony of the witnesses before him, and in doing so he may believe or disbelieve the testimony of any witness, in whole or in part. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962); *Southland Life Insurance Co. v. Aetna Casualty & Surety Co.*, 366 S.W.2d 245 (Tex.Civ.App.— Fort Worth 1963, writ ref'd n. r. e.); 62 Tex.Jur.2d *Witnesses* §§ 369–374 (1965).

█ We have concluded that the judgment below is correct because (a) the record does not show any abuse of discretion by the trial court in modifying the child support provisions; (b) the provisions of the original divorce decree providing for an automatic increase in child support payments under a prescribed formula was not based on the actual needs of the children and was unenforceable; and (c) the record amply supports the trial court's finding that the movant's financial condition had changed and that the amount awarded by the trial court would amply support the children's needs.

All of the points of error have been considered and all are overruled.

Finding no reversible error, we affirm the judgment of the trial court.