**Paul A. BRANSTAD,
Petitioner-Appellant,**

v.

**Gayle E. BRANSTAD,
Respondent-Appellee.**

**No. 1–1278A370.**

Court of Appeals of Indiana,
First District.

Feb. 5, 1980.

Dan A. Patterson, Thompson, Jones & Patterson, Columbus, for petitioner-appellant.

F. Jefferson Crump, III, Jewell, Crump & Angermeier, Columbus, for respondent-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant Paul A. Branstad challenges the judgment entered by the Brown Circuit Court in an action for dissolution of his marriage to respondent-appellee Gayle E. Branstad.

## FACTS

Both Paul and Gayle petitioned for the dissolution of their marriage. The parties entered into an agreement concerning the division of their marital assets and payment of their liabilities, but they could not agree as to who would have custody of their two children.

The trial court conducted a final hearing on June 21 and 22, 1978. On December 27, 1978, judgment was entered awarding Gayle custody of the two children. The trial court ordered Paul to pay $1,200 per month for the maintenance and support of the parties' two children and also ordered that the amount of child support should be adjusted annually by the percentage change in the Consumer Price Index published by the United States Department of Labor.

## ISSUES

1. Did the trial court err in refusing to hear evidence which Paul asserted, in his motion to correct errors, was newly discovered evidence?

2. Did the trial court rely upon inadmissible evidence in determining the amount of child support payments?

3. Did the trial court fail to consider all relevant factors in determining the amount of child support payments?

4. Is the award of $1,200 per month for child support excessive?

5. Did the trial court err in including a provision for automatic changes in the amount of child support, based upon changes in the Consumer Price Index?

6. Did the trial court commit reversible error by allegedly making certain remarks during recess of the final hearing?

*Issue One*

At the final hearing held on June 21 and 22, 1978, Gayle testified that she was earning $64 per week gross. The trial court did not rule upon the issue of child support until six months after the date of the final hearing. In his motion to correct errors Paul asserted that he should be granted an opportunity to present "newly discovered evidence" proving that Gayle, subsequent to the final hearing, had gained other employment which resulted in increased earnings for Gayle.

IC 1971, 31–1–11.5–12(a) (Burns Code Ed., Supp. 1979) lists the financial resources

of the custodial parent as a relevant factor in calculating a reasonable amount for child support. The trial court heard evidence concerning Gayle's income as of the time of the final hearing.

Ind. Rules of Procedure, Trial Rule 53.2 provides that a judge shall not hold a cause under advisement for more than ninety days. Neither Gayle nor Paul followed prescribed procedure for enforcing T.R. 53.2. Instead, each waited for the ruling and then Paul sought an opportunity to show changes which had occurred during the six-month lapse.

■ Indiana law specifically provides for modification of a child support order upon a showing of changed circumstances. IC 1971, 31–1–11.5–17 (Burns Code Ed., Supp. 1979). The evidence to which Paul refers in his motion to correct errors may serve as a basis for seeking modification of the support order. Paul, however, has cited no authority, from this jurisdiction or any other jurisdiction, for his proposition that "newly discovered evidence" includes newly developed evidence which did not exist at the time of the final hearing and which does not prove facts as they existed at the time of the final hearing.[1] Paul has not demonstrated error.

*Issues Two, Three, and Four*

Paul argues that the award of $1,200 per month as child support is excessive. He also asserts that the trial court relied upon speculative evidence[2] and ignored relevant factors in determining the amount of child support.

In *Eppley v. Eppley,* (1976) Ind.App., 341 N.E.2d 212, 215, this court wrote:

" * * * [T]he determination of the amount of child support to be paid, if any, is a matter firmly committed to the discretion of the trial court. As such it is reviewable only on the ground of abuse, and will be reversed or modified only where an abuse is clearly shown. . . ." (Citations omitted)

IC 1971, 31–1–11.5–12 (Burns Code Ed., Supp. 1979) lists factors relevant to a calculation of child support payments:

"(a) In an action pursuant to section 3(a) or (b) [subsections (a) or (b) of 31–1–11.5–3], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved;

(3) Physical or mental condition of the child and his educational needs; and

(4) Financial resources and needs of the noncustodial parent."

At the time of the final hearing Gayle earned $64 per week gross from her employment. Immediately prior to the final separation of Paul and Gayle, the family lived in a home valued at $193,000 and spent approximately $2,800 per month for household expenses. Erik, age eight years, attended grade school. Mark was two years old. Paul had a net income exceeding $50,000 annually. Paul testified that his annual expenses amounted to $1,800 utilities, $9,864 mortgage payments, $1,500 taxes, $6,000 food, $9,000 housekeeper, $4,000 insurance, $7,000 accumulation toward children's education, and $2,000 automobile expense, for a total of $41,164. The $6,000 food expense was for Paul and the two children. Paul testified that if he did not retain custody of the children, the expenses for a housekeeper would also be reduced

---

1. See *Patrick v. Sedwick* (Alaska 1966) 413 P.2d 169 and cases cited therein for rule that evidence must relate to facts which existed at time of trial in order to qualify as newly discovered evidence.

2. Although Paul repeatedly refers to an exhibit prepared by Gayle as "speculative evidence" and as evidence "prohibited by the rules of evidence" and as evidence "objectionable by the rules of evidence," he has cited no authority in support of his characterizations.

because the housekeeper would work part time rather than full time.[3]

■ Having carefully considered the evidence, we find no indication that the trial court ignored relevant factors or relied upon inadmissible evidence in calculating the amount of child support payments. In light of the evidence adduced at the final hearing, the award of $1,200 per month is not excessive.

*Issue Five*

The trial court ordered that the amount of child support should be adjusted annually by the percentage change in the Consumer Price Index published by the United States Department of Labor. Paul argues that this provision violates IC 1971, 31–1–11.5–17 (Burns Code Ed., Supp. 1979):

"(a) Provisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. . . ."

Paul contends that the trial court's provision "allows for a modification of the support award without a hearing and denies [Paul] a fair and impartial hearing on the issue of support."

*In Interest of J. M. and G. M.,* (Tex.Civ. App.1979) 585 S.W.2d 854 presents this set of facts: A decree of divorce had provided that the child support payments would be $500 per month from September 15, 1976 through January 1, 1977; $750 per month through the next five months; $1,000 per month during the next seven months; $1,250 per month during the next five months; and $1,500 each month thereafter. In disapproving the provisions, the Texas court explained at page 857 of 585 S.W.2d: "The facts of the case before us, as in every case involving child support, require the exercise of sound discretion by the trial judge, and not the arbitrary application of any formula. . . ." In particular, at

page 859, the court found fault with the provisions because " . . . the provisions of the original divorce decree providing for an automatic increase in child support payments under a prescribed formula was [sic] not based on the actual needs of the children . . . ."

■ In the case at bar, the trial court ascertained that monthly payments from Paul in the amount of $1,200 were necessary in order to meet the actual needs of the children. The adjustment provision simply assures that the buying-power equivalent of $1,200 as of January 1, 1979, will be available each month during succeeding years. The decree, of course, can be modified upon a showing of changed circumstances, as IC 31–1–11.5–17 prescribes, notwithstanding the adjustment provision.

*In Re Marriage of Mahalingam,* (1978) 21 Wash.App. 228, 584 P.2d 971, concerns a dissolution decree which required the husband to pay $200 per month as support, plus 20% of any net increase in salary which he received from his employer, plus 10% of any net income which he received from any other source. The Washington court approved the provision, with one judge dissenting. In *Mahalingam* appears a listing of other cases in which such escalation clauses have been approved or disapproved.

Preliminarily we emphasize that our reference to *Mahalingam* must not be viewed as approval for the form of provision there under consideration by the Court of Appeals of Washington. In that case, increases in the income of the father are the sole catalyst for the change in the amount of support. Such a provision possesses the same defect which proved fatal in *J. M. and G.M., supra*: It is not based upon the actual needs of the child.

Nevertheless, we find merit in certain points made by the Court of Appeals of Washington. That court, in its opinion written in 1978, noted at page 976 that

---

3. The evidence does not support Paul's contention that his expenses will exceed his income if he pays $14,400 annually for child support.

" . . . rampant inflation quickly diminishes the effective amount of support . . .." (Footnote omitted) Although an award is adequate when made, it all too soon ceases to be a sufficient amount with which to meet the needs of the child. A custodial parent then must return to court. The Washington court reasoned in its footnote 10 at page 977:

" . . . the use of escalation clauses appears to be consonant with public demand to reduce the need for people to continually return to court to modify support decrees, as well as the present trend of the judicial system to devise acceptable methods of judicial economy."

We would note also that the automatic adjustment eliminates the need to incur the expense of attorney fees. Additionally, the provision requires only a readily obtainable bit of objective information, the Consumer Price Index, for a computation which can be made without difficulty.

In summary, we approve the court's order prescribing an adjustment in the amount of child support based upon changes in the Consumer Price Index because the provision (1) gives due regard to the actual needs of the child, (2) uses readily obtainable objective information, (3) requires only a simple calculation, (4) results in judicial economy, (5) reduces expenses for attorney fees, and (6) in no way infringes upon the rights of either the custodial parent or the non-custodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances.[4]

*Issue Six*

Paul contends that the judge denied him a fair hearing on the issue of child support.

Gayle testified that, if she were awarded custody of the parties' two children, she would need $1,263.70 per month from Paul as child support payments.[5] Gayle then offered an exhibit representing her anticipated expenses and proposed budget. Paul objected and argued that the exhibit was inadmissible because it was speculative. The judge overruled the objection and asked to see counsel for both parties in chambers. According to Paul, the judge then warned that, if Paul did not withdraw the objection the judge "would continue the hearing for thirty days, change custody, and allow Gayle to incur actual expenses so she may testify." Paul insists that he then withdrew his objection solely in order to prevent the threatened change of custody.

■ When a trial court awards custody of children upon the dissolution of a marriage, the primary consideration must be the best interest of the children. *Schwartz v. Schwartz*, (1976) Ind.App., 351 N.E.2d 900. Certainly the best interest of the children is also vitally important in awarding temporary custody during the pendency of the proceeding.

■ We will not minimize the impropriety of the action threatened by the trial court. The change of custody for such a purpose could only cause unnecessary trauma in the lives of the children. A trial court can sustain or overrule objections without resort to such tactics.

Nevertheless, we do not find that Paul was denied a fair hearing. The controversy existed solely with regard to the exhibit. During cross-examination Paul had abundant opportunity to emphasize any and all deficiencies of the exhibit. The evidence, even without inclusion of the exhibit, supports the judgment of the trial court.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.

---

4. Most certainly a parent could petition the court for the purpose of showing that his or her income had nor increased sufficiently to enable that person to meet increases in support obligations caused by the adjustments for the changes in the Consumer Price Index.

5. Paul made no objection.