In re the MARRIAGE OF Nancy L. STAMP and Gerald R. Stamp

Upon the Petition of Nancy L. Stamp, Appellant,

And Concerning Gerald R. Stamp, Appellee.

No. 63657.

Supreme Court of Iowa.

Dec. 17, 1980.

Rehearing Denied Jan. 9, 1981.

John W. Hayek of Hayek, Hayek & Hayek, Iowa City, for appellant.

R. Bruce Haupert of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

The most troublesome issue in this marital dissolution appeal is whether trial court should have granted petitioner Nancy L. Stamp's request that the decree include yearly automatic cost-of-living adjustments (COLA) to the child support award. She also asserts the child support award was inadequate, the property division was inequitable and based on an erroneous valuation of the parties' home, and that the court should have received in evidence certain exhibits relating to expert testimony on future economic conditions. Respondent Gerald R. Stamp has requested attorney fees on appeal. We affirm in part, reverse in part, modify and remand.

Nancy and Gerald were married October 28, 1972, and lived in Iowa City. They have two daughters, Carrie Lyn, born December 10, 1973, and Stephanie Beth, born November 29, 1976. Nancy filed her petition to dissolve the marriage on August 3, 1978.

The parties' financial statements disclosed that both were employed by the University of Iowa, Gerald as a data processor and Nancy as a secretary. They stipulated that Nancy would have custody of their daughters. They agreed on the value of most of the personalty and its division, and on a division of their debts. They disagreed on the value of their home.

May 11, 1979, Nancy filed a motion requesting the following provision be incorporated in the decree:

## ADJUSTMENT OF CHILD SUPPORT PAYMENTS

On or before each anniversary date of this decree, the parties shall file a stipulation with the Clerk of this Court providing for increased or decreased child support payments based upon the following: Child support payments shall be increased or decreased by the same percentage as the percentage change in the National Consumer Price Index as published by the United States Department of Labor for the most recent twelve month period for which data is available, provided that Respondent's gross income for the like period has increased by at least the same percentage. If Respondent's gross income increased by a lesser percentage, then the payments to Petitioner shall increase by this lesser percentage. In the event Respondent claims the benefit of the above limitation, he shall submit copies of his federal tax returns or other sufficient proof of income to Petitioner for the relevant years. If the parties are

unable to stipulate to the correct adjustment amounts, either may request that the Court determine the same, either itself or by appointment of a special master. The cost of such proceedings shall be shared equally by the parties and any adjustment made shall relate retroactively if necessary to the appropriate anniversary date.

The case came on for trial May 11, 1979. In its May 17, 1979, decree the court dissolved the marriage but rejected Nancy's proposed COLA provision. The court found the net realizable value of the residence was $52,500. This resulted in a $72,960 gross valuation of the parties' assets, and a net valuation of $38,803 after deducting debts totaling $34,157.

The court found Gerald had earned approximately sixty-one percent and Nancy thirty-nine percent of their combined salary income. Through division of the personalty, debt allocation, and a property settlement of $8000 to be paid by Gerald to Nancy, the parties' net assets were divided roughly in the same 60–40 ratio.

Nancy was awarded custody of both children. Gerald was ordered to pay $35 per week as support for both children, in addition to a monthly medical insurance premium of $37.88.

In the divisions that follow we address the issues identified in the first paragraph of this opinion.

I. *Should trial court have provided for a cost-of-living adjustment?*

We have already set out the COLA formula that Nancy submitted in her pretrial motion for incorporation in the decree. Trial court, citing In re Marriage of Meeker, 272 N.W.2d 455 (Iowa 1978), rejected this concept with the statement "that such built in method of computing child support has not been approved in this state."

Nancy's counsel argues the formula she advances does not provide for automatic modification based upon income, as in *Meeker*, but rather seeks to preserve the original determination from the ravages of inflation, subject only to a corrective adjustment if Gerald's income does not keep pace with inflation.

Nancy called as a witness Charles E. Marberry, University of Iowa professor of finance, who traced the extended period of accelerating inflation that began about 1966. It was his opinion that the longer inflation persists the more difficult it is to control, and that "if we're lucky" the annual inflation rate might be reduced to four percent in ten years. Professor Marberry testified he could "predict with reasonable confidence that the consumer price level next year will be higher than it is now and that fifteen years from now it will be ... significantly higher."

Nancy's brief asserts her formula is the only fair and equitable method of adjusting child support to compensate for this long-range inflation, that it reduces but of course does not eliminate loss of purchasing power to the custodial parent, reduces the burden imposed on courts by adversary modification proceedings, eliminates the need for the custodial parent to incur substantial attorney fees and costs related to modification, and eliminates the uncertainties such proceedings bring.

Nancy admits imposition of a child support COLA formula would not be appropriate in all instances, but argues that in certain cases like this one a formula should be implemented after considering certain factors. Such factors would include the income history and employment stability of both parents, whether future significant fluctuations in income are likely, whether significant changes in other factors affecting child support such as health, job changes and special needs of the children are foreseeable, and whether the custodial parent's income, along with projected expenses, will require significant sacrifices by that parent in the absence of child support adjustments.

Gerald argues the COLA formula assumes changes in other factors affecting child support will not occur, that acceptance of this formula will bring an avalanche of cases with different formulas addressing

various situations, that the parties likely would not stipulate as required by the formula, that proposed annual adjustments would probably trigger full-blown modification hearings, and that such a conditional judgment would make it impossible for the parties to plan.

George relies on *Meeker*, 272 N.W.2d 455, where we modified a trial court decree that fixed child support as a percentage of the father's "gross annual receipts as reflected on Schedule C of his Federal income tax return," subject to a lower limit of $1800 and an upper limit of $3120. We observed such arrangements are based on the assumption only one factor would measure the needs of growing children, and that complicated computations invite, rather than avoid, disputes. We cited and quoted from *McDonald v. McDonald*, 183 N.W.2d 186, 189 (Iowa 1971), which excised a trial court child support formula that provided a "sliding scale" based on the income of both parties. In *Meeker*, 272 N.W.2d at 456, we also said the decision in *Scheldrup v. Gaffney*, 243 Iowa 1297, 55 N.W.2d 272 (1952), "should not be interpreted as an endorsement of this [percentage-of-income] type of child support provision." We noted that while we gave the father no relief in *Gaffney*, the percentage-of-income formula in that decree had been stipulated by the parties, and the father's attack on the decree in a contempt-of-court proceeding was collateral.

Our decisions in *Meeker* and *McDonald* are in accord with those from several other jurisdictions that have considered various percentage-of-income formulas for automatically increasing child support or alimony. *Breiner v. Breiner*, 195 Neb. 143, 145–47, 236 N.W.2d 846, 848–49 (1975); *DiTolvo v. DiTolvo*, 131 N.J.Super. 72, 76–77, 328 A.2d 625, 627–28 (1974); *In Interest of J. M. and G. M.*, 585 S.W.2d 854, 856–57 (Tex. Civ.App. 1979). It should be noted that since *Meeker* and *McDonald* we have experienced more inflation, and at a greater rate. Other states have approved decrees incorporating such escalation clauses. *Vollenhover v. Vollenhover*, 4 Ill.App.2d 44, 45–46, 123 N.E.2d 114, 114–15 (1954); *Condy v. Condy*, 328 Ill.App. 8, 12–15, 65 N.E.2d 219, 221–22 (1946); *Keller v. Keller*, 230 So.2d 808, 810 (Miss.1970); *In re Marriage of Mahalingam*, 21 Wash.App. 228, 234, 584 P.2d 971, 976 (1978) ("We believe in these times of economic uncertainty where rampant inflation quickly diminishes the effective amount of support, the use of a reasonable escalation provision is not violative of either RCW 26.09.100 [child support statute] or RCW 26.09.170 [modification statute]."); *see generally Lewis v. Lewis*, 256 Md. 45, 47, 259 A.2d 246, 246–47 (1969); Annot., 75 A.L.R.3d 493 (1977); Note, *Inflation-Proof Child Support Decrees: Trajectory to a Polestar*, 66 Iowa L.Rev. 131 (1980).

Of course the fact a COLA provision might make a judgment conditional provides no reason to reject it in a dissolution decree. *See Gaffney*, 243 Iowa at 1303, 55 N.W.2d at 275 ("This court has held in many cases that the rule that conditional judgments are wrong has no application to decrees in equity."); 24 Am.Jur.2d *Divorce and Separation* § 660 (1966). Many of our dissolution decrees are prospectively conditional, as is the one before us with the opened-ended requirement to pay the health insurance premium, which probably will increase. *See, e. g., In re Marriage of Florke*, 270 N.W.2d 643, 645 (Iowa 1978) (medical expenses); *In re Marriage of Zoellner*, 219 N.W.2d 517, 522 (Iowa 1974) (insurance coverage); *Conkling v. Conkling*, 185 N.W.2d 777, 786 (Iowa 1971) (college expenses).

We have found only one decision involving a child support escalation clause based on the consumer price index. In *Branstad v. Branstad*, —— Ind.App. ——, 400 N.E.2d 167 (1980), the trial court fixed the child support at $1200 per month "and also ordered that the amount of child support should be adjusted annually by the percentage change in the Consumer Price Index published by the United States Department of Labor." *Id.* at ——, 400 N.E.2d at 168. In approving this formula, the Indiana Court of Appeals noted the adjustment provision simply assured that the buying power equivalent of $1200 would be available each month during the succeeding years. *Id.* at ——, 400 N.E.2d at 170. The court concluded:

In summary, we approve the court's order prescribing an adjustment in the amount of child support based upon changes in the Consumer Price Index because the provision (1) gives due regard to the actual needs of the child, (2) uses readily obtainable objective information, (3) requires only a simple calculation, (4) results in judicial economy, (5) reduces expense for attorney fees, and (6) in no way infringes upon the rights of either the custodial parent or the non-custodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances. *Id.* at ——, 400 N.E.2d at 171.

■ It is true we have judicially noticed the reduced purchasing power of the dollar when considering child support payments in modification proceedings. *Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974); *Spaulding v. Spaulding*, 204 N.W.2d 634, 636 (Iowa 1973). In *Hunt v. State*, 252 N.W.2d 715 (Iowa 1977), we noted:

Numerous federal statutory provisions use the consumer price index either to determine eligibility or calculate the amount of benefits. Included are determining cost of living increases in social security benefits, 42 U.S.C. § 415, adjusting retirement and retainer pay in the military, 10 U.S.C. § 1401a, adjusting cost of living increases in annuities of retired civil service workers, 5 U.S.C. § 8146a, and computing cost of living increases for retired foreign service workers, 22 U.S.C. § 1121. It is used to make changes in appropriations to states for child care food payments, 42 U.S.C. § 1766, school milk programs, 42 U.S.C. § 1772, and summer food programs for children in service institutions, 42 U.S.C. § 1758.

*Id.* at 722. Such statutory escalation provisions are a recognition of long-standing and continuing inflation. We think it is common knowledge, subject to judicial notice, that similar provisions frequently have been incorporated in collective bargaining agreements, leases, and other private sector agreements in attempts to insulate the contracting parties from inflation's toll.

There is strong reason to provide children of broken homes the same protections afforded broad segments of the population if it can be accomplished with fairness to the parents and without overloading our straining judicial system. Our present practice presents the custodial parent with the Hobson's choice of absorbing the impact of significant daily deterioration in the purchasing power of fixed child support payments, or incurring substantial legal expenses in returning to court for needed modification.

We are not required here to determine whether a trial court could "factor in" an adjustment for future inflation when fixing a level child support award, or whether a trial court should indicate it has or has not taken inflation into consideration to avoid uncertainty in a subsequent modification proceeding. *See Mears v. Mears*, 213 N.W.2d 511, 514–15 (Iowa 1973); *Warren v. Warren*, 191 N.W.2d 659, 660–61 (Iowa 1971) ("Changed circumstances relied upon to obtain modification . . . must be such as were not within the knowledge or contemplation of the court when [the] decree was entered . . . .") (quoting *Huffman v. Huffman*, 176 N.W.2d 859, 861 (Iowa 1970)).

If the dissolution parties, with a spirit of fairness and concern for their children, stipulate to a COLA formula for child support, the risks of yearly resistance to increased support, with attendant legal expense and animosity, will be diminished. In such a situation, a trial court in its discretion might well incorporate a fair stipulation in a dissolution decree, just as the trial court did in *Gaffney*.

■ Although no such stipulation was made in the case before us, this situation is one we deem well-suited for imposition of a child support escalation clause based on the consumer price index, limited by the easily ascertainable changes in Gerald's gross salary. Trial court concluded our *Meeker* decision prohibited adoption of a COLA formula in the dissolution decree. However, *Meeker*, and *McDonald* upon which the *Meeker* court relied, both presented different factors that increased the risk of uncertainty, evasiveness, and resulting litigation and ex-

pense. The formulas in both cases were not based on the consumer price index, a measurement independently developed and easily obtained. Rather, both were keyed to the father's income tax return, the preparation of which is susceptible to questionable legal interpretations, subjective reasoning and mathematical errors. Trial courts addressing child support issues should not be required to become entangled in the type of controversies that often rage between taxpayers and the revenue services. *Meeker* and *McDonald* are distinguishable from this case on their facts and on the type of child support formulas proposed.

In this case Gerald's gross salary from the state, which limits the cost-of-living increase in child support, is readily obtainable without resort to tax returns. The employment history of both parties is stable, with gradual salary increases instead of wide fluctuations. The record does not reflect substantial prospective changes in the various other factors that would require frequent reexamination in modification proceedings. If such changes occur, either party would have grounds to file a petition for modification of child support.

■ We hold that trial court in these circumstances was not restrained by *Meeker* from including a COLA provision in its decree. Upon remand it shall include a provision substantially similar to the one requested. Gerald's actual gross salary, not a gross income figure from his income tax return, shall limit the cost-of-living adjustments.

## II. *Was the initial child support award inadequate?*

The applicable principles this jurisdiction follows in exercising the section 598.21 statutory power to "make such order in relation to the children ... and the maintenance of the parties as shall be justified" have been set out in our cases and will not be repeated here. *See, e. g., Zoellner,* 219 N.W.2d at 525; *In re Marriage of Carney,* 206 N.W.2d 107, 112 (Iowa 1973); *Yansky v. Yansky,* 172 N.W.2d 114, 117–18 (Iowa 1969). Many of those concepts have recently been statu-

torily capsulated in a new section 598.21, *see* 1980 Session, 68th G.A., ch. 1175, § 3, which contains the provision that the court also may consider "[o]ther factors the court may determine to be relevant in an individual case." *Id.* § 598.21(4)(i).

At time of trial Gerald's monthly gross income was $1308.33. He testified he would receive "at least four percent and possibly a seven percent raise" in July 1979. Trial court fixed his child support obligation at $35 per week for both children, in addition to a monthly health insurance premium of $37.88. This totals $188.38 per month for the two children. Nancy's gross salary was $871 per month, and in some months she received overtime pay.

■ In our opinion Gerald's estimated net income after living expenses was unreasonably diminished by his election to live in the family home with its attendant expenses. These include monthly charges for mortgage payment of $200, electricity and gas expense of $110, real estate tax of $75 and repairs of $42. An adjustment to his estimated living expenses to reflect a reasonable amount for housing would provide more money for child support.

We hold he should be required to pay $30 per week per child, to terminate when the child attains the age of 18 unless the child is then attending high school, in which event payments for said child shall continue until the child completes her high school education. Gerald shall pay the health insurance premium as provided in the decree. In thus fixing child support payments, we are cognizant of Gerald's obligations under the decree to pay some of the family's indebtedness. Of course, these child support payments will be subject to the COLA provision.

## III. *Was the property division inequitable?*

Nancy contends the court should have valued the parties' residence at $60,000 in conformance with her expert witness' opinion, rather than fixing the value at $52,500. Because the home was awarded to Gerald,

she argues this made the property settlement unfair.

 An extensive discussion of the evidence would not contribute to our jurisprudence. We hold trial court was justified on this record in finding the home was worth $52,500.

■ Trial court rounded out the division of property and indebtedness by awarding Nancy an $8000 property settlement to be paid "at the option of the Respondent" in installments of $100 per month to commence July 1, 1981, and to be paid in full if the residence was sold. We hold this obligation should draw interest at nine percent per annum payable monthly, and until paid in full the balance should constitute a lien on the residence awarded Gerald.

IV. *Should trial court have admitted into evidence the exhibits prepared by the expert relating to his testimony on economic conditions?*

In the course of Professor Marberry's testimony, Nancy sought to introduce certain charts he had prepared to demonstrate (1) the projected future cost of feeding a child, (2) the rates of change in the consumer price index and (3) the direct progression in the amount of dollars needed for a constant purchase. The objections were largely foundational and were ultimately sustained.

■ Exhibit 16, showing the annual rates of change in the national consumer price index since 1946, was objected to on grounds of hearsay and irrelevancy. In view of the witness' foundational testimony, we hold the objection should have been overruled. *See Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 657–59 (Iowa 1969). In any event, the court could have judicially noticed the underlying statistics, *see Town of LeClaire v. Ahrens,* 195 N.W.2d 719, 720 (Iowa 1972); *Iron Workers Local 67 v. Hart,* 191 N.W.2d 758, 769 (Iowa 1971), and made its own computation. Because we have not considered the other exhibits in our de novo review and the case will not be retried, we find no reason to examine the remaining contested rulings. *See In Inter-* *est of Adkins,* 298 N.W.2d 273, 278 (Iowa 1980).

We deny Gerald's request for attorney fees on appeal, and tax the costs two-thirds to Gerald and one-third to Nancy. We remand for modification of the decree in conformance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, MODIFIED AND REMANDED.