Susan K. HERRON, Appellant
(Petitioner Below),

v.

L. Nicholas HERRON, Appellee
(Respondent Below).

No. 4-582A126.

Court of Appeals of Indiana,
Fourth District.

Dec. 13, 1983.

John J. Dillon, William T. Rosenbaum, Dillon, Hardamon & Cohen, Indianapolis, for appellant.

Ken A. Elmendorf, Elmendorf & Meyer, Brownsburg, for appellee.

CONOVER, Presiding Judge.

Petitioner-Appellant Susan K. Herron appeals from the trial court's decree dissolving her marriage to L. Nicholas Herron, raising the following issues:

1. Whether the court abused its discretion in ordering the marital home to be sold;

2. Whether the court, in dividing the marital property, erroneously gave Nicho-las credit for his payment of marital obligations during the dissolution proceedings;

3. Whether the court erred in admitting and considering Nicholas's tendered offer of settlement;

4. Whether the court's child support order was inadequate or based on erroneous findings of fact;

5. Whether the court erred in requiring an annual review and adjustment of child support based solely on financial statements submitted by the parties; and

6. Whether the court erred in failing to dispose of Nicholas's retirement account.

We affirm.

I.

Susan first claims the court erred in ordering that the marital residence be sold and the proceeds divided equally.[1] She claims this order was an abuse of discretion in light of IND.CODE 31-1-11.5-11(b)(3), requiring the court to consider "the desirability of awarding the family residence or the right to dwell therein for such periods as the Court may deem just to the spouse having custody of any children ...." Susan, the custodial spouse, testified the family's house was ideal for the children since it was located near schools, stores, and a library.

When a trial court's division of marital assets is challenged on appeal, the scope of our review is limited. We will reverse only where the division is so clearly contrary to the logic and effect of the facts before the court as to be an abuse of discretion.[2] Swinney v. Swinney, (1981) Ind.App., 419 N.E.2d 996, 997–98. Further, we will presume the trial court properly considered the statutory factors. Temple v. Temple, (1982) Ind.App., 435 N.E.2d 259;

---

1. Susan also contends the commissioner appointed to sell the house was given "overbroad and illegal authority" in the court's decree. Her brief, however, is devoid of cogent argument or citation to authority on this issue. Any error is accordingly waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

2. As we have noted before, the lack of statutory guidelines gives the trial court almost limitless power in dividing the assets and leaves us without concrete standards by which to review the trial court's decision. Thus, absent an error of law, we review the evidence and pronounce in conclusory terms that the court's decision was or was not an abuse of discretion. Lord v. Lord, (1982) Ind.App., 443 N.E.2d 847, 850–51 n. 4.

*Cornett v. Cornett,* (1980) Ind.App., 412 N.E.2d 1232. This presumption is not rebutted here merely because the court did not give Susan possession of the house. Although the court was required to consider doing so, its overriding duty was to divide the assets "in a just and reasonable manner." IND.CODE 31–1–11.5–11(b); *Cornett, supra.*

■ In this case, the most valuable asset to be divided was the Herrons' house, valued at $68,000 and subject to a $24,000 mortgage. Aside from the house, there was relatively little marital property to be divided. Thus, the court could not have awarded Susan the house outright without giving her the lion's share of the marital property. The court clearly did not abuse its discretion in refusing to do so. *See Swinney, supra.* Susan contends, however, that the court abused its discretion in refusing to delay the sale of the house, so she and the children could live in it until the children reached eighteen. Such an order, Susan points out, would give Nicholas his share of the property eventually without disrupting the children's home life. Although such an order might have been just and reasonable, we do not believe the court abused its discretion in rejecting this proposed disposition. First, delaying the sale would give Susan the enjoyment, for eight years, of most of the marital property. Further, due to Susan's minimal income, Nicholas would have been required to continue making house payments in the interim, in addition to child support payments. In light of the court's overriding duty to divide the marital property "in a just and reasonable manner," IND.CODE 31–1–11.5–11(b), we cannot agree that the court abused its discretion in ordering the marital residence sold immediately.

## II.

■ Susan further claims the court erred in giving Nicholas credit for his payment of marital obligations during the dis-

solution proceedings.[3] Susan contends this amounted to an improper refund to Nicholas of child support and maintenance, paid under the court's preliminary order. We disagree. The court's final decree clearly did not give Nicholas credit for child support payments:

> The Court further finds that since the date of separation the Respondent has paid $10,584.12 on joint obligations of the marriage. *Of which sum, $3,450.00 was paid as Court ordered support.* The Respondent is to receive as credit against the assets of the marriage the sum of $3,567.06 which is to be given to Respondent as a set-off for the assets of the marriage. *Such sum was determined by subtracting $3,450.00 from $10,-584.12 and dividing by one-half.* (Emphasis added.)

Thus, the amounts for which Nicholas received credit only included house payments under the court's preliminary order and voluntary payments of other joint marital obligations. Susan cites no authority, and we have found none, for the proposition that a husband's voluntary payment of marital debts constitutes maintenance or that the court may not give the husband credit for such payments. The house payments Nicholas made under the court's provisional order, on the other hand, might conceivably be viewed as maintenance. Even so, it is not improper, in dividing marital property, to consider temporary maintenance paid by one spouse under a provisional order. The section governing such orders provides that, "[t]he issuance of a provisional order shall be without prejudice to the rights of the parties or the child as adjudicated at the final hearing ...." IND.CODE 31–1–11.5–7(e). Applying that section here, we do not believe the court's provisional order requiring Nicholas to make house payments prejudiced his right to have the court consider such payments in dividing the marital property. Giving Nicholas credit for paying joint mar-

---

**3.** Susan also claims the court erred in allowing Nicholas to ask her on cross-examination whether she thought he should be given credit for such payments. This error, however, is waived for lack of cogent argument. A.R. 8.3(A)(7).

ital obligations was an appropriate means of ensuring that the marital property was divided "in a just and reasonable manner." The court did not abuse its discretion in considering Nicholas's payment of marital obligations in dividing the marital property.

### III.

Next, Susan argues that the court erred in admitting and considering a "Tender of Offer" filed by Nicholas on the morning of trial. She contends this offer, setting forth the judgment terms Nicholas was willing to have entered against him, was inadmissible under T.R. 68, which provides in part:

> At any time more than ten (10) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten (10) days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. *An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.* (Emphasis added.)

The record clearly shows Susan rejected Nicholas's offer. Nevertheless, Susan has not shown any reversible error. Although this offer was filed with the court, it was never admitted into evidence. The record does show that Nicholas's counsel used the offer as a "guideline" in questioning Susan on the division of personal property, but the document itself was not placed in evidence at that time. Further, even if this document was admitted into evidence, the record shows Susan never made a timely objection. Thus, any error is waived. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

### IV.

Additionally, Susan challenges the court's child support order. Susan claims the decree was inadequate and was based on an erroneous finding that Nicholas's net monthly income was only $800. The determination of child support is within the trial court's discretion. *Morphew v. Morphew*, (1981) Ind.App., 419 N.E.2d 770. At trial, Nicholas's testimony and financial records showed that his income as a salesman was over $30,000 for several years prior to the dissolution. Six months before the dissolution, however, Nicholas went from a salary to a straight commission. Nicholas testified that a slump in sales during this period left him with a monthly income, after expenses, of $788. This testimony was supported by Nicholas's detailed business records, and Susan presented no contrary evidence. Nicholas's testimony was not, as Susan claims, incredible. The court's finding was not erroneous. Nor was the court's award of $105 per week for child support an abuse of discretion. This award equaled 57% of Nicholas's net weekly income. Nicholas was also required to pay for medical insurance covering the children and for music lessons. Under these circumstances, we cannot say the trial court abused its discretion. *Morphew, supra*.

### V.

Susan next contends the decree provision for modification of child support was contrary to law. As to child support, the decree provided Nicholas was to pay for the children's extra-curricular expenses, maintain his present medical insurance coverage, and contained other provisions for their health care. It also provided

3. Both parties are to comply with Indiana Law which requires annual disclosure of incomes on or before December 31 of each year. Further, that such disclosure shall be in writing.

4. Support is fixed in the amount of $105.00 per week or $35.00 per week per child until each such child is emancipated or until further order of the Court.

Such payment of support is to be paid through the Clerk of Hendricks County, Indiana, and is to commence on January 08, 1982 and continue each week thereafter until further Order.

Respondent-Husband is to be responsible for the payment of any docket fees due the Clerk of Hendricks County for maintenance of such support docket.

That the support obligation shall be reviewed and fixed on the 31st day of December of each calendar year until further Order of the Court. Such support obligation shall be based upon the submission by the parties of their annual disclosure of incomes and by use of the Support Guidelines and the divisibility in the Support Guideline adopted by this Court.

That the Court finds on this date and time that the Petitioner's income is not taken into account with regard to fixing the present support order; however, after this date, the Petitioner's income shall be added to the Respondent's income to determine the support obligation in accordance with the Court's guidelines utilized herein.

Susan contends this decree violates IND. CODE 31–1–11.5–17 because it allows child support to be modified without a hearing (including cross-examination) and without a showing of a substantial and continuing change in circumstances. We disagree.

Initially, we note Susan's counsel asked Nicholas on cross-examination

Q. Would you be willing to let the court tie the support to your income and have you report to the court yearly with your income tax return?

A. Sure.

Later, during a colloquy with counsel, the trial judge indicated the annual review of support provision would be included in the final decree. Susan made no objection or comment at the time, but now complains of that specific provision in the order.

▄▄ Even if such provision were erroneous, she may not now complain of it. A party may not take advantage of an error which he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Jolly v. Modisett,* (1971) 257 Ind. 426, 275 N.E.2d 780, 781–782; *Plan-Tec, Inc. v. Wiggins,* (1983) Ind.App., 443 N.E.2d 1212, 1230; *State Bd. of Tax Comm'rs. v. South Shore Marina,* (1981) Ind.App., 422 N.E.2d 723, 730. However, we do not ground this opinion upon the doctrine of invited error, preferring to address the "escalator clause" aspect of the trial court's decision.

▄▄ On appeal, we presume the trial court has correctly decided the case and indulge all reasonable presumptions in favor of its actions. *Merchant's Nat'l. Bank v. H.L.C. Enterprises,* (1982) Ind.App., 441 N.E.2d 509, 511; *State v. Kuespert,* (1980) Ind.App., 411 N.E.2d 435, 438. Further, Susan has not challenged the court's guideline in this appeal. We presume nothing in favor of appellant; it is her burden to show clearly the trial court erred. *Ross v. Review Board,* (1962) 243 Ind. 61, 65, 182 N.E.2d 585, 586; *Merchant's Nat'l Bank, supra,* 441 N.E.2d at 511; *English Coal Co. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 307, trans. den'd. For these reasons, we presume the trial court's support guideline is reasonable.

▄▄ Support guidelines give the interested parties advance notice of what the court's general position will be regarding support. Thus, the support issue is more or less resolved in advance of the hearing which in turn results in "judicial economy," i.e., less expenditure of the court's time on support issues at the final hearing and thereafter, in most cases.

We do not believe the trial court's order violates the "letter" or "intent" of either IND.CODE 31–1–11.5–12(a)

... "the court may order either parent or both parents to pay any amount reasonable for support of a child ..."

or IND.CODE 31–1–11.5–17(a) providing a support order may be modified

... "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

IC 31–1–11.5–17(a) refers to catastrophic changes in circumstance, not annual fluctuations in the cost of living index, local wage scales, and other economic factors trial courts consider when establishing or revising support guidelines of the kind here at issue.[4]

It seems to us apparent such orders not only do not violate, they further legislative intent in this area. As to child support, the legislature intended the best interests of the children involved were to be the prime consideration when trial courts determine support payment questions in dissolution cases. Such intent is better served by orders of the kind here entered, rather than those without flexibility because such orders realistically keep the purchasing power of the original support order current from year to year, and in consonance with the ebb and flow of the economy. *Branstad v. Branstad*, (1980) Ind.App., 400 N.E.2d 167, 170; *Petersen v. Petersen*, (1981) 85 N.J. 638, 428 A.2d 1301, 1303–1304; *In re Stamp*, (1980) Iowa, 300 N.W.2d 275, reh. denied, (Iowa 1981); *In re Meeker*, (1978) Iowa, 272 N.W.2d 455; *In Interest of J.M. and G.M.*, (1979) Tex.Civ. App., 585 S.W.2d 854, 856–57; *In re Mahalingam*, (1978) 21 Wash.App. 228, 584 P.2d 971; annot., 75 A.L.R.2d 493 (1977); Note, *Inflation-Proof Child Support Decrees: Trajectory to a Polestar*, 66 Iowa L.R. 131 (1980).

Further, we do not believe an unconscionable burden is placed upon a dissatisfied litigant to "disprove" a support order's reasonableness. Dissolution of marriage is a statutory not criminal proceeding in which the constitutional fundamentals and burdens of proof are substantially different. Such requirement is, of course, exactly the same in cases where support orders are rigidly structured.

Ratliff, J., cogently discussed the benefits flowing to the children involved, the litigants, and the courts from such orders in the following language:

> ... The ["escalator clause" support order] (1) gives due regard to the actual needs of the child, (2) uses readily obtainable objective information, (3) requires only a simple calculation, (4) results in judicial economy, (5) reduces expenses for attorney fees, and (6) in no way infringes upon the rights of either the custodial parent or the noncustodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances.

*Branstad*, 400 N.E.2d at 171. The benefits to the children and the litigants involved are obvious. They need no further discussion. The benefits of "judicial economy" as to the courts and, consequently, to the public we serve are not so obvious, and need further discussion.

The ever-increasing crush of litigation with which the judiciary of this state is expected to deal on a day-to-day basis is currently looming as a matter of major concern.[5] Under the circumstances cur-

---

**4.** Furthermore, nothing in the trial court's order or this opinion should be read as preventing a party from objecting annually to the accuracy of the computation or to any new schedule adopted by the trial court.

**5.** The Hendricks Circuit Court from which this appeal emanates, is a typical example of the staggering increase in caseload with which the Indiana judiciary is currently confronted. The Indiana Judicial Reports prepared by the Division of State Court Administration for the years 1976 through 1982 as to the Hendricks Circuit Court reveal the following:

| | 1976 | 1977 | 1978 | 1979 | 1980 | 1981 | 1982 |
|---|---|---|---|---|---|---|---|
| No. cases filed | 825 | 727 | 593 | 832 | 1,130 | 1,105 | 1,229 |
| No. cases venued in | 57 | 49 | 64 | 150 | 152 | 160 | 153 |
| Cases disposed of * | 676 | 801 | 667 | 1,869 | 1,240 | 1,223 | 1,370 |
| Jury trials | 7 | 14 | 8 | 9 | 10 | 14 | 16 |
| Bench trials | 409 | 503 | 494 | 662 | 572 | 509 | 535 |
| Non-trial dispositions | 251 | 284 | 165 | 1,198 | 658 | 700 | 819 |

* "Escalator clause" provisions by reducing the time a judge must spend on support matters would correspondingly increase the time a judge may devote to other matters and litigants. Thus, case dispositions should correspondingly increase if "escalator clause" provisions are adopted generally.

rently existing in our state, it is imperative we seize every opportunity which presents itself to expand the system's capacity to process this floodtide where the proposed action will not dilute or impair the quality of the particular judicial task involved. In other words, we should adopt measures which give more judicial "bang for the buck" to use the vernacular when the opportunity presents itself. So-called "escalator clause" provisions present such an opportunity, and we should act upon it constructively. The Hendricks Circuit Court's caseload increase, *cf.* note 5 below, is typical of what is happening in all the courts of this state, both trial and appellate. Future projections show no relief in sight in the foreseeable future.

Lastly, we note we here deal with a locally-researched and prepared support guideline, not merely a national economic indicator such as the Cost of Living Index. In other words, the trial court considered local economic conditions as well as national indices when it formulated and modified its support guideline from time to time to keep it current with economic conditions in Hendricks County and its environs. That consideration, it seems to us, removes the last vestige of reasonable objection to court orders incorporating such guidelines as the measure of child support in dissolution decrees. We applaud such laudible judicial advances.

### VI.

 Finally, Susan argues the court erred in failing to dispose of Nicholas's IRA. It is true that, to divide marital property fairly, the court must consider all of the spouses' property. *Wireman v. Wireman*, (1976) 168 Ind.App. 295, 343 N.E.2d 292. We do not agree, however, that the court failed to consider and dispose of Nicholas's IRA. The court's final decree said, "[t]he Court further finds that the Respondent owns a certain IRA plan with a value at the date of the parties' separation of $7,672.21 ...." The decree

further provided, "each party shall retain all personal property in their care, custody and control at the time of the final hearing herein ...." The term "personal property" is a broad one, applicable to intangible property interests. *See McNevin v. McNevin*, (1983) Ind.App., 447 N.E.2d 611. Thus, the IRA, clearly in Nicholas's "custody and control" at the time of the hearing, belongs to Nicholas under this decree. We find no error.

Affirmed.

MILLER, J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Justice, dissenting.

I dissent from the majority's holding that the trial court may make annual adjustments in child support based only on the court's support guidelines and the parties' financial statements. I believe the provision in the trial court's decree allowing such adjustments violates Ind.Code 31–1–11.5–17 because it allows child support to be modified without a showing of a substantial and continuing change in circumstances. Under this decree Nicholas' child support obligation may be modified annually on a showing of any change in the parties' income. Thus, if Nicholas suffers a business loss in December 1984, his child support obligation will automatically be reduced throughout 1985, even if his income returns to normal in that year. Further, Susan will be unable to avoid this reduction even by showing the drop in Nicholas' income was only temporary. The majority's view that such a result is consistent with Ind.Code 31–1–11.5–17 seems completely untenable.

Indeed, the majority hardly bothers to explain how such a decree can be upheld

under the statute, choosing instead to justify the result by invoking the concepts of judicial economy and the best interests of the children. All of these public policy arguments, however, merely suggest that the General Assembly should revise the statutes to allow this sort of self-adjusting decree. It should be noted that our present statutory scheme promotes judicial economy by removing from trial courts the duty of continuously monitoring minor or temporary changes in the parties' circumstances. It also discourages frivolous petitions to modify child support by placing a heavy burden on the petitioner to prove a substantial and continuing change in circumstances has occurred. The decree here, by contrast, seems likely to give rise to prolonged litigation every year as each party challenges the accuracy of the other's financial statement. For these very reasons, although there is a split on this issue, courts in several states have rejected automatic "escalator clauses. *E.g., Stanaway v. Stanaway*, (1976) 70 Mich.App. 294, 245 N.W.2d 723; *Breiner v. Breiner*, (1975) 195 Neb. 143, 236 N.W.2d 846; *Provenzano v. Provenzano*, (1979) 71 A.D.2d 618, 418 N.Y.S.2d 140; *Falls v. Falls*, (1981) 52 N.C.App. 203, 278 S.E.2d 546; *Picker v. Vollenhover*, (1956) 206 Or. 45, 290 P.2d 789; *Karim v. Karim*, (1980) S.D., 290 N.W.2d 479. *See* Annot., 19 A.L. R.4th 830.

I would accordingly vacate the portion of the trial court's decree requiring an annual adjustment of child support and affirm the trial court's decree in all other respects.