MARY COOPER FALLS v. RALPH L. FALLS, JR.

No. 8010DC502

(Filed 2 June 1981)

**1. Divorce and Alimony § 25.12— visitation rights—consent of children—no error**

There was no merit to the contention of defendant husband that the trial court failed to make a positive determination of the visitation rights of defendant and that the trial court's order left defendant's visitation rights in the hands of the children themselves and was therefore improper, since the trial court's order granted defendant husband liberal visitation rights and allowed him, in effect, to visit the children at any time as long as it did not conflict with the family's routine, cause chaos, or was against the children's wishes; the restrictions on defendant's visitation rights were warranted in light of the evidence that there had been considerable physical violence between plaintiff

and defendant which one or more of the children had witnessed or had participated in, and there was evidence of physical and mental abuse by defendant toward the children causing the children to be afraid of defendant; and the children in this case, who were seventeen, fourteen, and eleven, were all of sufficient age to exercise discretion in choosing a custodian.

**2. Divorce and Alimony § 24.1— child support—husband's ability to pay**

There was no merit to defendant husband's contention that the trial court failed to make findings and conclusions about his living expenses, net income, and ability to provide child support where the trial court's findings sufficiently detailed the husband's needs, fixed expenses, gross and net spendable income, debt and loan payments, and what the court termed his lavish expenditures on himself and his children to support the trial court's order of child support.

**3. Divorce and Alimony § 24.2— separation agreement—alimony provision not intended as child support**

The trial court in a proceeding for child support did not err in excluding evidence offered by defendant husband tending to show that a provision in a separation agreement executed by the parties allowing for $1,000 per month as alimony was actually meant as child support.

**4. Divorce and Alimony § 24.1— child support—amount of award supported by evidence**

In a proceeding for child support there was no merit to defendant husband's argument that the monthly awards for each child exceeded anything proved by the evidence, since the trial court's award was based on the plaintiff wife's detailed affidavit which set forth expenses for each of the three children and upon plaintiff's answers to questions on cross-examination that the actual expenses were taken from her check book, check stubs, and receipts for expenditures on behalf of the children during the four months immediately preceding the trial; however, the trial court erred in ordering defendant husband to pay "tutor costs if needed, private school tuition costs and fees if private school becomes a necessity for any child," since the record was totally devoid of any evidence that any of the children needed private school education or tutors, and at the time of trial none of the children were attending private school and there was no intent to enroll a child in private school.

**5. Divorce and Alimony § 24.5— child support—automatic increase based on cost of living index**

The trial court erred in awarding annual increases in child support based on the U.S. Consumer Cost of Living Index, since there was nothing in the record to establish the general reliability of the particular index used, and since the cost of living escalator in this case focused exclusively on circumstances of the children and a cost of living index while ignoring the changing or unchanging ability of the parents to pay. G.S. 50-13.4(c).

**6. Divorce and Alimony § 27— attorney's fees—no evidence of nature and reasonable worth**

The trial court in a child custody and support proceeding erred in awarding attorney's fees to plaintiff wife where there was no evidence in the record as to the lawyer's skill, his hourly rate, its reasonableness in comparison with that of other lawyers, what he did, and the hours he spent, and the trial court's sole finding and conclusion that the attorney's services had "reasonable value in excess of $2,000" was insufficient to support an award.

APPEAL by defendant from *Parker, Judge.* Judgment entered 31 January 1980 in District Court, WAKE County. Heard in the Court of Appeals 22 January 1981.

This action, seeking temporary and permanent child custody and support, and counsel fees, was filed by the plaintiff wife against the defendant husband on 21 November 1979. The case was heard during the 2 January 1980 civil domestic session of Wake County District Court. From a 2 February 1980 Order awarding the wife attorney's fees and child support, and also conditioning the husband's custody and visitation privilege, the husband appealed. On appeal, the husband challenges several portions of the Order, including:

1. The findings and conclusions which, although awarding joint custody to the parties, condition the husband's custody and visitation on the consent of each child;

2. The alleged failure of the court to include sufficient findings and conclusions concerning the husband's expenses and his ability to provide support;

3. The court's exclusion of evidence offered by the husband tending to show that the $1,000 per month alimony provision in the Separation Agreement was actually meant as child support;

4. The findings and conclusions requiring the husband to pay child support in an amount allegedly not supported by evidence;

5. The findings and conclusions in which the amount of child support automatically increases each September based on the cost of living index and is contingent on the needs of the children likewise increasing;

6. The findings and conclusions awarding the wife $2,000 attorney's fees.

THE PARTIES

Mary Cooper Falls and Ralph Lane Falls, Jr. were married to each other on 29 July 1962, and three children were born of the marriage: Mary Cooper Falls (Cooper); Louise Lane Falls (Lulu); and Ralph Lane Falls, III (Ralph). The parties separated on 23 December 1978 and executed written separation agreements which were dated 7 April 1979 and 13 April 1979. Prior to their separation on 23 December 1978, the parties lived at 1103 Cowper

Drive, in a 3,500 square foot, four-bedroom house which was valued at $200,000 at the time of trial. Pursuant to the terms of the 13 April 1979 Separation Agreement, the wife sold her equity in the home to the husband and received $40,000 cash and a $10,000 "Note" from the husband. The wife later used a large portion of the cash to purchase and renovate a three-bedroom home. The Separation Agreement specified that the children were to live with the wife, and the wife was to receive $1,000 per month alimony and a total of $500 per month for the support of the children.

During the marriage, the wife's role was primarily that of mother and homemaker. She was not employed at the time of trial and had a separate income for the 1979 calendar year of $474. At the time of trial, the wife had $9,000 in a savings account, had invested $15,000 in Treasury Bills, owned stock worth $6,500, and owned the $10,000 Note of the husband due in 1981. The wife also had an equity of $13,000 in the three-bedroom house she purchased following the separation. The wife testified that the estimated monthly living expenses for the children were as follows: Cooper, $680; Lulu, $770; and Ralph, $600.

The husband, during the marriage, was primarily responsible for earning an income for the family. At the time of trial, the husband was president and sole stock-holder in Roane-Barker, Inc., a medical supply company. He had a gross taxable income in 1978 of $134,370 and maintained $800,000 worth of life insurance. The life insurance had a cash value of $20,000. The husband had use of a company car and owned three other cars which he had restored or was restoring. From 1974 through 1976 the husband was in the real estate business and had no earned income after business expenses. Thereafter, he acquired Roane-Barker, Inc. In order to buy into that business, he sold all of his significant assets other than his home and borrowed $185,000 from his father and $150,000 from a bank. His father, in connection with his loan, has certain rights to convert part of it to Roane-Barker stock. The husband is also a personal guarantor of a $450,000 bank loan to Roane-Barker, and the bank holds a security interest in all accounts receivable of Roane-Barker. The house at 1103 Cowper in which the husband resides is subject to three mortgages, including one to the bank as security for the Roane-Barker loans. In addition to the $1,500 per month payments to the wife and children under the Separation Agreement, the husband has house

Falls v. Falls

payments of $1,148 per month and other debt payments of $3,933 per month.

THE ORDER

In its Order filed on 2 February 1980 the trial court awarded the parties "joint custody," specifying that the children were to live with the wife and awarding visitation to the husband on the first and third weekends of each month, one weekday evening per week, four weeks in the summer and alternate holidays. All of the outlined periods of visitation were subject to the consent of the children. With respect to child support, the defendant was ordered to pay the following: $550 per month for each daughter and $500 per month for his son; all medical (including psychiatric counseling), dental and hospital bills; all educational expenses, including costs for tutors if needed, and costs of tuition for private school "if [it] become necessary for any child;" and "maintenance, repair and upkeep costs on [the wife's] automobile for the use and benefit of the children." The trial judge specified in the Order that the monthly child support payments "shall be increased annually as the cost of living (and the attendant expenses for said children) increases, provided that the needs of the children at the time said increase goes into effect meet or exceed the total amount of child support plus increase." The increases were to be based on the percentage increase of the September 1981 consumer price index over the September 1980 consumer price index. Finally, the husband was ordered to pay the wife's attorney fees of $2,000.

*Hunter, Wharton & Howell, by John V. Hunter, III for defendant appellant.*

*Kimzey, McMillan & Smith, by James M. Kimzey for plaintiff appellee.*

BECTON, Judge.

CUSTODY AND VISITATION

[1]  The husband assigns as error the trial court's failure to make "a positive determination of the visitation rights of the [husband]," and the court's failure to include "positive provisions to assure that visitation would occur." The husband argues that the portion of the trial court's Order which leaves his visita-

tion rights "in the hands of the children themselves. . . , is incongruous" with the court's conclusion "that both the [wife] and [husband] are fit and proper persons to have joint custody of the children."

The trial court made a positive determination of the husband's visitation rights. Conclusion of Law Number 1, which we find to be based upon proper findings of fact, is dispositive of this issue.

> Both the [wife] and the [husband] are fit and proper persons to have joint custody of the minor children subject to the following *conditions and restrictions;* but the children's best welfare will be served by the [wife] having the ultimate right to control and supervise the children including first authority as to their physical presence at her home and final authority as to major decisions concerning their physical, mental, educational and social welfare and well being. The [husband] is to be consulted on all major decisions concerning the children's well being as well as have the physical presence of the children as is hereafter set forth upon the consent and willingness of the children to be with the [husband] . . . . (Emphasis added.)

The "conditions and restrictions" which are set forth in subparts (a) and (b) of Conclusion of Law Number 1, actually grant the husband liberal visitation rights—he has custody of the children during the first and third weekends of each month, one afternoon each week, four consecutive weeks during the summer, Easter vacation in odd-numbered years, every other Thanksgiving and Christmas, and any other time as agreed to by the parties. The husband can, in effect, visit the children at any time as long as it does not conflict with the family's routine, cause chaos, or is against the children's wishes. The Record on Appeal indicates that two of the children, Cooper and Ralph, were visiting the husband at and during the time of the trial. The husband's contention that he has been denied visitation, and his characterization of the "joint custody" provision as "sole custody" is without merit. The husband has not been denied custody or access to the children, although restrictions have been placed on his right of visitation.

When severe restrictions are placed on the right of visitation, G.S. 50-13.5(i) requires the trial judge to make findings of

fact supported by competent evidence which warrant the restrictions. *In re McCraw Children*, 3 N.C. App. 390, 165 S.E. 2d 1 (1969). Specifically, the statute provides:

> [I]n any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.

G.S. 50-13.5(i).

No one questions the existence, nor for that matter the soundness, of the well-recognized principle of law that the trial court has broad discretion in matters of child custody and visitation. The general rule is thus stated in *Brooks v. Brooks*, 12 N.C. App. 626, 630, 184 S.E. 2d 417, 420 (1971):

> The guiding principle to be used by the court in a custody hearing is the welfare of the child or children involved. While this guiding principle is clear, decision in particular cases is often difficult and necessarily a wide discretion is vested in the trial judge. He has the opportunity to see the parties in person and to hear the witnesses, and his decision ought not to be upset on appeal absent a clear showing of abuse of discretion. (Citation omitted.)

Although there was evidence at trial that both the husband and the wife were competent adults who loved their children, there was also evidence of considerable physical violence between the wife and the husband which one or more of the children witnessed or in which one or more of the children participated. There was also considerable evidence of physical and mental abuse by the husband toward the children. The trial court found from the evidence that the husband had been abusive toward the wife and the children, that the children were afraid of the husband, and consequently conditioned the husband's visitation rights on the consent of the children. In this we find no abuse of discretion.

Moreover, "[t]he wishes of a child of sufficient age to exercise discretion in choosing a custodian is entitled to considerable weight when the contest is between the parents, but is not controlling." *Hinkle v. Hinkle*, 266 N.C. 189, 197, 146 S.E. 2d 73, 79

(1966). This court has previously held that a trial judge could consider the wishes of a ten-year-old child when making a determination of custody. *In re Custody of Stancil,* 10 N.C. App. 545, 179 S.E. 2d 844 (1971). The three children in this case are all of sufficient age to exercise discretion. Cooper is seventeen and is clearly old enough to make intelligent choices. Lulu is fourteen and was described as the smartest of the three. And, Ralph is eleven and was described at trial as being very bright.

On the issue of custody and visitation, the trial court made extensive findings of fact based on competent evidence, and those findings are conclusive on appeal. *Shepperd v. Shepperd,* 38 N.C. App. 712, 248 S.E. 2d 871 (1978), *cert. denied,* 296 N.C. 586, 254 S.E. 2d 34 (1979); *Jarmon v. Jarmon,* 14 N.C. App. 531, 188 S.E. 2d 647, *cert. denied,* 281 N.C. 622, 190 S.E. 2d 465 (1972); *Brooks v. Brooks; In re Custody of Stancil; Hinkle v. Hinkle.*

CHILD SUPPORT

(a) The Husband's Ability To Provide Support

[2]    The husband argues that the court failed to make findings and conclusions about his living expenses, net income, and ability to provide support. We have reviewed the findings, and they sufficiently detail the husband's needs, fixed expenses and income to support the conclusions reached. Indeed, the trial court made extensive findings of the husband's gross and net spendable income; his debt and loan payment; and what the court termed, his lavish expenditures on himself and his children. By way of example, the court found that the husband paid taxes on an income of $134,370 for the 1978 tax year; that the husband owned, what the court concluded to be an excessive amount of life insurance ($800,000); that the husband spent over $3,000 in acquiring, restoring and repairing his three convertible automobiles, spent over $2,000 during a six-month period on clothes, and spent over $3,000 on decorations and furnishing for his four-bedroom house. By way of further example, the court found that the husband spent "extravagant" sums of money on his children as he saw fit, while paying an inadequate sum to the wife for the children's basic needs. This was evidenced by the fact that he bought a fur coat valued at $977 for his oldest daughter, Cooper; bought rings from Tiffany's in New York valued at $250 each for his daughters, Cooper and Lulu; gave $300 to his son Ralph so he could buy

Cooper and Lulu presents; and took Ralph on a fishing trip valued at $800. The husband presented evidence of his debt payments, and from his testimony the court arrived at, and found as a fact that the husband had, a $4,500 per month net spendable income. The findings and conclusions detailing the husband's expenses, net income, and ability to provide support to his children are sufficient and binding on us on appeal.

 (b) Whether the $1,000 Alimony Provision In the Separation Agreement Was Intended To Be Child Support

[3] The husband contends that the court's exclusion of evidence offered by him, tending to show that the $1,000 per month alimony provision in the Separation Agreement was actually meant as child support, was error. According to the husband, the trial court not only precluded him from testifying about the parties' intent, but also excluded two letters from the wife's former attorney to the husband's former attorney which clearly demonstrate that the Separation Agreement was signed at a time when the wife was willing to waive all rights to alimony in exchange for child support in the amount of $500 per month, *per child*. (One of the excluded letters was dated a few days before the Separation Agreement and constituted the wife's counter-proposal for settling the parties' differences.)

 On this issue, the husband first argues that, because this action for child support was brought less than eight months after the parties had entered into a written separation agreement, the court under *Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E. 2d 487, 491 (1963) must indulge the presumption that child support payments pursuant to a separation agreement are just and reasonable. The *Fuchs* court actually held that custody and support provisions in a separation agreement are not binding on the court.

  The provisions of a valid separation agreement, including a consent judgment based thereon, cannot be ignored or set aside by the court without the consent of the parties. Such agreements, . . . with respect to marital rights, however, are not final and binding as to the custody of minor children or as to the amount to be provided for the support and education of such minor children. *Holden v. Holden*, 245 N.C. 1, 95 S.E. 2d 118.

---

---

. . .

> However, we hold that where parties to a separation agree-
> ment agree upon the amount for the support and
> maintenance of their minor children, there is a presumption
> *in the absence of evidence to the contrary,* that the amount
> mutually agreed upon is just and reasonable.

*Id.* at 639, 133 S.E. 2d at 491. The evidence in this case is suffi-
cient to overcome the *Fuchs* presumption. The wife testified that
she signed the Separation Agreement "because I thought it would
be the best at the time, to relieve me and the three children — me
particularly from a great deal of emotional harassment." She fur-
ther testified that she instituted this action because "I realized
that I could not live on the amount of money that was stipulated
in the separation agreement. . . ." The presumption was rebutted
in this case; there was "evidence to the contrary" from which the
trial court could find that the needs of the children exceeded
payments of $166.67 per month, per child. In this case, as in
*Williams v. Williams,* 261 N.C. 48, 59, 134 S.E. 2d 227, 235 (1964),

> there is evidence that the amount agreed upon in the deed of
> separation was inadequate, considering the income of the
> defendant, the mode of life to which he had accustomed
> the children prior to the separation, and the station of life of
> the parties. In view of all the circumstances disclosed by the
> evidence in this case we cannot say that [the judge] abused
> his judicial discretion in fixing the amount he did for the sup-
> port of the defendant's children.

   The husband next argues that the Separation Agreement, on
its face,

> suggests that the $1,000 per month payments for the wife are
> child support (even though called 'alimony'), for they have the
> very unusual feature of surviving the remarriage of the wife
> or the death of the husband, and they terminate at the ap-
> proximate time when two of the three children of the parties
> would have reached the age of eighteen, leaving in effect
> $500 per month child support for the sole child who will then
> be a minor.

This argument is not without its counterargument, however. For
example, the $1,000 per month payments are to terminate on the

death of the wife. This is a usual characteristic of alimony, not child support.

We are not unmindful of the fact that, for tax reasons, many family-law practitioners use the term alimony to mean payments intended exclusively as child support. *See Soper v. Soper,* 29 N.C. App. 95, 223 S.E. 2d 560 (1976); and *Zuccarello v. Zuccarello,* 13 N.C. App. 531, 186 S.E. 2d 651 (1972). We are also aware of *Pruneau v. Sanders,* 25 N.C. App. 510, 214 S.E. 2d 288, *cert. denied,* 287 N.C. 664, 216 S.E. 2d 911 (1975) in which this court found it was error to follow the literal wording of a separation agreement and not to require the wife to apply alimony payments for child support. However, in *Pruneau,* the separation agreement specifically provided that "alimony" was to be applied to child support. There is no similar provision in the Separation Agreement before us. Indeed, Paragraph 8 of the Separation Agreement, after reciting that the wife is to receive $1,000 per month alimony, states:

> So long as there shall be any living child of the parties under the age of eighteen, the husband shall pay the wife, on the first day of each month beginning June 1, 1979, the total sum of Five Hundred Dollars ($500) for the support of such children or child of the parties under eighteen years of age, as may then be living.

Use of the term "alimony" to mean child support by family-law practitioners is not controlling; *Pruneau* is distinguishable.

The husband proffered extrinsic evidence of prior negotiations to show that "alimony" was really "child support" in the face of two clear provisions in the separation agreement—one saying alimony in the amount of $1,000 per month, and the other saying child support in the amount of $500 per month.[1] The

---

1. The wife's attorney objected to the proffered testimony and letters stating: "settlement negotiations are privileged." While it is true that certain types of conduct "might well be considered as implied admissions, [and] are excluded from evidence on grounds of policy [footnote omitted] [and while it is further true that] . . . from the making of an *offer of compromise* one might logically infer a consciousness of liability," 2 Stansbury, N.C. Evidence § 180 at 56 (Brandis Revision 1973), the proffered letters and the proffered testimony of the husband in this case, were not efforts to prove any admission by, or fault of, the wife. Consequently, there were no "grounds of policy" or "privilege" requiring exclusion on the stated grounds. The husband's attorney, evidently aware of this, explained his reason for tendering the evidence objected to: "[o]ne purpose for my offering these is simply

language in this Separation Agreement is not specific as is the language in *Pruneau*, nor can it be reasonably intrepreted to mean that alimony was actually child support. Moreover, as we noted parenthetically before, part of the proffered evidence included a letter dated a few days before the Separation Agreement which set forth the wife's *counter-proposal* for settling the parties' differences. We do not know the terms of the original proposal, nor do we know if the alimony and child support provisions were agreed upon as a result of corresponding adjustments in other provisions (for example, division of property) of the Separation Agreement. The extrinsic evidence arising out of the negotiation process was properly excluded. Negotiations to an agreement are considered merged in the written agreement, and parol evidence is not admissible to add to, take from, or vary the terms of the agreement. *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E. 2d 522 (1965).

(c) The Adequacy Of The Child Support Awards

[4]   The husband argues that the "monthly awards for each child exceeds anything proved by the evidence" because the court failed to make specific findings as to what the actual past expenditures for the children were. This argument is without merit. In Finding of Fact Number 41, the trial court found that "the monthly expenses necessary to support the children on an individual basis exceed the following amounts: Mary Cooper Falls, $680.00; Louise Lane Falls, $610.00; and Ralph Lane Falls, III, $600.00." This finding of fact was based not only upon the wife's detailed affidavit which set forth expenses for each of her three children, but also upon her answers to questions on cross examination that the actual expenses were taken from her checkbook, check stubs, and receipts for expenditures on behalf of the children during the four months immediately preceding the trial. (The affidavit was executed on 10 December 1979, but the wife testified that she penciled in corrections so as to make the affidavit current.) Although the wife admitted that the monthly figures in her affidavit include amounts which do not represent actual present expenditures such as summer camp which the children may or may not attend, that testimony does not vitiate the award. Indeed, the

to show what the parties contemplated when they signed the separation agreement, both as to the house and the child support and her support."

trial court obviously considered this testimony in making its award. The wife, in her affidavit, listed expenses for Cooper in the amount of $683.25, but the court awarded only $550.00 per month; the affidavit listed expenses of $768.49 for Lulu, but the court only awarded $550.00; and the affidavit listed expenses for Ralph in the amount of $600.38, but the court only awarded $500.00. The expenses listed in the affidavit and testified to by the wife seem reasonable to support the children in the mode of living to which they were accustomed. Considering all the circumstances disclosed by the evidence, we cannot say that the trial judge abused his discretion. The Findings and Conclusions were based on competent evidence and are conclusive on appeal.

Before turning to the Cost of Living Adjustment Clause, we hold that the husband *is* entitled to relief from one portion of the child support order to which he specifically took exception. Paragraph 5(f) of the decretal portion of the Order requires the husband to pay "tutor costs if needed, private school tuition costs and fees if private school becomes a necessity for any child." The husband's assignment of error to this portion of the Order is sustained. The record is totally devoid of any evidence that any of the children need private school education or tutors. At the time of trial, none of the children was attending private school, and there was no intent to enroll a child in private school.

(d) Cost-Of-Living Adjustment (COLA)[2]

[5]   The trial court, evidently assuming that the United States Consumer Cost of Living Index is a generally accepted and accurate gauge of the cost of living, provided for automatic adjustments of child support payments as the cost of living increased because of inflation. The husband takes exceptions to the trial court's assumption and proviso, and argues that the court had no authority to award annual increases in child support based upon the "Cost of Living Index."

We set forth the decretal portion of the order below.

9. The monthly child support of $550.00 for Mary Cooper Falls and Louise Lane Falls and $500 for Ralph Lane Falls,

---

2. *See In Re Stamp*, 300 N.W. 2d 275 (Iowa 1980), *reh. denied,* --- N.W. 2d --- (Iowa 1981).

III shall be increased annually as the cost of living (and the attendant expenses for said children) increases, provided that the needs of the children at the time said increase goes into effect meet or exceed the total amount of child support plus increase. The amount of the monthly child support payment for each child shall be increased for the succeeding 12 months by such amount, if any, as may be necessary to keep the level of the payments, during those succeeding 12 months at a consistent level by comparison of the United States Consumer Cost of Living Index for the month of September, 1980, for the same month of the year 1981 and each year thereafter. If the Index is revised by changing the base period, this shall be taken into consideration in fixing the amount of payment for child support calculated with respect to the Index based upon the new base, it being the intent of the Court that said payments be increased annually, consistent with the increase of the cost of living, as reflected by the official statistics of the United States with reference to the costs thereof during the month of September, 1980 if at any time the government of the United States ceases to compile and publish the United States Consumer Cost of Living Index, then the obligation of the husband under this ordering paragraph shall be governed by such other statistics, public or private, as are commonly accepted as reflecting with reasonable reliability the information now contained in the United States Consumer Cost of Living Index.

The imposition of a child support COLA formula might be appropriate under certain circumstances. Indeed, inflation-proof child support orders using either "percentage-of-income" formulas for automatically increasing child support, or yearly "automatic cost-of-living adjustments," have gained some measure of notoriety in recent years. *Peterson v. Peterson*, --- N.J. Super. ---, --- A 2d --- (filed: 21 April 1981); *In re Stamp*, 300 N.W. 2d 275 (Iowa 1980), *reh. denied*, --- N.W. 2d --- (Iowa 1981); *Branstad v. Branstad*, 400 N.E. 2d 167 (Ind. App. 1980); *In re Meeker*, 272 N.W. 2d 455 (Iowa 1978); In Interest of J.M. and G.M., 585 S.W. 2d 854, 856-57 (Tex. Civ. App. 1979); *In re Mahalingam*, 21 Wash. App. 228, 584 P 2d 971 (1978); annot., 75 ALR 3d 493 (1977); Note, Inflation-Proof Child Support Decrees: Trajectory to a Polestar, 66 Iowa L.R. 131 (1980).

The COLA concept is not without its attractive features. These "escalation clauses" can "preserve the original determination from the ravages of inflation," reduce the burden imposed on courts by adversary modification proceedings, eliminate the need for the custodial parent to incur substantial attorney's fees and costs, and eliminate the uncertainty such proceedings bring. *In re Stamp,* 300 N.W. 2d at 277. In *Branstad,* which involved a child support escalation clause based on the Consumer Price Index, the court said: the provision

> (1) gives due regard to the actual needs of the child, (2) uses readily obtainable objective information, (3) requires only a simple calculation, (4) results in judicial economy, (5) reduces expenses for attorney fees, and (6) in no way infringes upon the rights of either the custodial parent or the non-custodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances.

400 N.E. 2d at 171.

Proponents of these escalation clauses argue that it is common knowledge, which should be judicially noticed, that COLA provisions based on the Consumer Price Index have been "incorporated in collective bargaining agreements, leases, and other private sector agreements in attempts to insulate the contracting parties from inflation's toll." *In re Stamp,* 300 N.W. 2d at 279. Moreover,

> numerous federal statutory provisions use the consumer price index either to determine eligibility or calculate the amount of benefits. Included are determining cost of living increases in social security benefits, 42 U.S.C. § 415, adjusting retirement and retainer pay in the military, 10 U.S.C. § 140la, adjusting cost of living increases in annuities of retired civil service workers, 5 U.S.C. § 8146a, and computing cost of living increases for retired foreign service workers, 22 U.S.C. § 1121. It is used to make changes in appropriations to states for child care food payments, 42 U.S.C. § 1766, school milk programs, 42 U.S.C. § 1772, and summer food programs for children in service institutions, 42 U.S.C. § 1758.

*Hunt v. State,* 252 N.W. 2d 715, 722 (Iowa 1977).

In spite of their attractiveness however, escalation clauses have uniformly been rejected when the formula *assumes that no*

*change will occur in other factors affecting child support.* For the reasons set forth below, we reject the attempt by the trial court to set up a self-adjusting, self-perpetuating support order in this case because the court ignored the relevant and changing circumstances surrounding the children *and the parties.* (We note parenthetically that the wife never prayed for an automatic annual increase in child support payments; that there is no indication in the record that this matter was ever mentioned in the trial court; and that no explanation appears why the Index is to be applied yearly in September—the case was tried in January and the Separation Agreement was executed the preceding April.)

In this case, there is absolutely nothing in the record to establish the general reliability of the particular index used. In *In re Stamp*, the wife called as a witness a University of Iowa Professor of Finance who, after tracing the extended period of accelerated inflation that began in 1966, opined, among other things, "that the longer inflation persists the more difficult it is to control" and predicted "with reasonable confidence that the consumer price level next year will be higher than it is now and that fifteen years from now it will be significantly higher." *Id.* at 277. There was no such expert testimony in this case. Moreover, this court cannot take judicial notice that the Consumer Price Index is the most accurate gauge of inflation. The Consumer Price Index is only one of several measures of the cost of living. Unlike other indexes, it does not compensate for shifts in buying practices as prices rise. Indeed, a number of economists believe that its structure tends to overstate the true impact of inflation on Americans since it includes costs of energy and housing. Spouses simply do not buy houses each year. Can we say that the Consumer Price Index is more reliable than the Personal Consumption Expenditure Deflator which is compiled as part of the calculation of the Gross National Product? During 1980, the Personal Consumption Expenditure rose by 10%,[3] compared to 12.4%[4] for the Consumer Price Index.

---

3. Personal Consumption Expenditure Deflator: United States Commerce Department, *Survey of Current Business* (Dec. 1980)

4. Consumer Price Index: Bureau of Labor Statistics, United States Labor Department, *CPI: Detailed Report* (Dec. 1980)

More importantly, however, the portion of the child support order appealed from is at odds with North Carolina statutory and case law. To put in effect an automatic increase in the future based on one factor, a cost of living index whose reliability is totally unsubstantiated by the record, violates G.S. 50-13.4(c) which states:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, *earnings*, conditions, accustomed standard of living of the child and the parties, *and other facts of the particular case.* (Emphasis added.)

The order ignores the changing or unchanging "earnings . . . and other facts of [this] particular case." Indeed, it allows future changes in support payments without any showing of changed circumstances of the parents. It is not sufficient that there is a proviso that conditions the increase on the children's need at the time the increase goes into effect since the income of the parents is also a relevant factor under G.S. 50-13.4(c).

Some courts blanketly prohibit judgments *in futuro* whose propriety may depend on circumstances materially different from those shown by the evidence and which cannot reasonably be predicted from the evidence. *Picker v. Vollenhover*, 206 Ore. 45, 290 P. 2d 789 (1955). Other courts reject "self-adjusting" portions of child support orders because the needs of the child and the income of the parents cannot be accurately anticipated in advance. *McManus v. McManus*, 38 Ill. App. 3d, 645, 348 N.E. 2d 507 (1976). We find the cost of living escalator in this case to be infirm because it focused exclusively on circumstances of the children and a cost of living index while ignoring the changing or unchanging ability to pay of the parents. We find support in the decisions of other courts. In *DiTolvo v. DiTolva*, 131 N.J. Super. 72, 328 A. 2d 625 (1974); *Breiner v. Breiner*, 195 Neb. 143, 236 N.W. 2d 846 (1975); and *Stanaway v. Stanaway*, 70 Mich. App. 294, 245 N.W. 2d 723 (1976), future percentage clauses based entirely on the husband's income were disallowed because the equally important factor — the reasonable needs of the children — were not considered. *See also In re Meeker*, 272 N.W. 2d 455 (Iowa 1978).

This court's decision in *Goodwin v. Snepp*, 10 N.C. App. 304, 178 S.E. 2d 231 (1971) also provides support for the conclusion

that we reach. In *Goodwin*, which involved the construction of a separation agreement providing for a modification in the monthly alimony payments if the husband's income was substantially reduced, this court held it was error to order "future revisions proportionate to changes in the salary or other income of the defendant, since necessarily such automatic revisions will fail to take into account the circumstances of *both parties* at the time the revisions occur." (Emphasis added.) *Id.* at 309, 178 S.E. 2d at 234.

We think an acceptable annual adjustment formula based on the percentage change in a generally accepted and accurate index of the cost of living should include, at a minimum:

1. Provisions focusing not only on the needs of the child, but also on the relative abilities of the custodial and non-custodial parent to pay;

2. Provisions stating that if the non-custodial parent's income decreases, or increases by a lesser percentage than the percentage change in the index, then the child support payments shall decrease or increase by a like or lesser percentage;

3. Provisions stating that if the parties are unable to determine or stipulate to the correct adjustment, either party may request that the court determine the same; and

4. Provisions allowing either party to petition the court for modification due to a substantial and continuing change of circumstance.

*See In re Stamp; Branstad v. Branstad; Peterson v. Peterson.*

In this case, the above listed factors are not present. As stated before, there is no evidence of the general accuracy of the "Index," nor of the likelihood that the "Index" will accurately reflect the situation in the area where the children are living from year to year. Additionally, the husband is burdened with heavy periodic debt payments which will continue for the next several years. He is operating his business under loan agreements which forbid any increase in his salary, and all of the stock of his corporation is pledged for the payments of debts. Moreover, the husband, who is already paying $41,000 in taxes each year, will

Falls v. Falls

likely see a sharp increase in taxes in the future because he will lose the benefit of income tax averaging, which was available to him the last two taxable years. (He had no taxable income between 1974 and 1976.)

On the record before us we are unable to sustain the cost of living increases. However, we do not seek to discourage parties who, "with a spirit of fairness and concern for their children, stipulate to a COLA formula for child support [since such a stipulation would seem to minimize] the risks of yearly resistance to increased support, with attendant legal expense and animosity. . . ." *In re Stamp*, 300 N.W. 2d at 279.

## ATTORNEY FEES

[6] The husband finally argues that the court impermissibly awarded attorney's fees to the wife when there was no evidence of the nature and reasonable worth of the attorney's services. While we are convinced that the wife's attorney diligently processed her case and spent a considerable amount of time on this case, there is no evidence in the record as to the scope and nature of the legal services rendered, the time and skill required, or any finding or conclusion with regard to those matters. The sole finding and conclusion that the attorney's services have a "reasonable value in excess of $2,000" is not sufficient under *Austin v. Austin*, 12 N.C. App. 286, 183 S.E. 2d 420 (1971), and *Cornelison v. Cornelison*, 47 N.C. App. 91, 266 S.E. 2d 707 (1980). To support an award of attorney's fees, the trial court should make findings as to the lawyer's skill, his hourly rate, its reasonableness in comparison with that of other lawyers, what he did, and the hours he spent. No such findings could be made in this case because there was no evidence on these vital matters. Moreover, the required statutory findings that the wife is acting in good faith and has insufficient means to defray the expenses of the suit, have not been made. G.S. 50-13.6; *Hudson v. Hudson*, 299 N.C. 465, 263 S.E. 2d 719 (1980). Under our statute and decisions, the award of attorney's fees cannot stand.

Reversed in part, affirmed in part.

Chief Judge MORRIS and Judge VAUGHN concur.