ELMORE, Judge.
Douglas Wayne Overton ("defendant") appeals from declaratory judgment on the parties' Contract of Property Settlement. After careful consideration, we affirm.
I. Background
Plaintiff and defendant were married on 9 November 1985, and separated on 2 June 2011. At the date of separation, all children born of the marriage had reached the age of majority. On Good Friday, 22 April 2011, defendant told plaintiff that he wanted to end the marriage. To facilitate the separation, the parties elected not to get lawyers, and to split the marital estate equally.
On 25 April 2011, plaintiff withdrew the monies in the parties' joint account, $139,486.21, and placed it in a separate account in her own name. Plaintiff made the withdrawal without notifying defendant, although plaintiff later paid defendant his one-half share of the money from the joint account.
The parties placed their marital residence on the market, which sold on 20 May 2011. However, the parties continued to reside in the same residence until they separated on 2 June 2011.
By the end of June 2011, the parties had agreed upon a distribution of the marital property. As such, plaintiff prepared a "Contract of Property Settlement" (hereinafter "the Settlement Agreement" or "the Agreement") consisting of two typed pages that memorialized the agreed upon division of marital property. Specifically, the Settlement Agreement, in the third unnumbered paragraph, provides:
Husband and wife have made arrangements that are mutually agreed upon by both in connection with settlement of all marital property and all marital assets. This signed agreement provided for a final settlement of all marital property and all marital assets. Husband and wife accept that all marital property and all marital assets have been divided with both husband and wife acknowledging mutual satisfaction with the division and distribution of all said property and assets.
In the fifth and sixth unnumbered paragraphs, the Settlement Agreement provides:
Husband and wife waive any and all claims, now or hereafter, relating to distribution of any marital property and/or any marital assets.
Husband and wife acknowledge and agree that the division and distribution of all marital property and all marital assets is equitable and satisfactory, and that this agreement shall be legally binding on both husband and wife.
Plaintiff alleges that she called defendant on 30 June 2011 and asked him to sign the Settlement Agreement, and defendant agreed. That same day, the parties met at Robert Tadlock Insurance Agency, the parties' auto insurance provider, to sign the Agreement. Plaintiff handed the Agreement to defendant, who looked at the document and signed it in the presence of the notary public. The notary testified that defendant placed the Agreement on the counter, looked at it, and signed it without objecting to its contents. The notary also testified that defendant could have refused to sign or was free to leave the premises with the Agreement in hand. Defendant now claims that plaintiff procured his signature through fraud, and that the terms of the Agreement were unconscionable.
II. Analysis
A. Challenges to Findings of Facts
Defendant challenges findings of fact 15, 25, 33, 40, 45, 53, 58 and 69 as being unsupported by competent evidence in the record. We review each of defendant's challenges to the trial court's findings below.
"[I]n a declaratory judgment action where the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal. We review the trial court's conclusions of law de novo." Calhoun v. WHA Med. Clinic,PLLC, 178 N.C.App. 585, 596-97, 632 S.E.2d 563, 571 (2006) (citations omitted). "If different inferences may be drawn from the evidence, [the trial judge] determines which inferences shall be drawn and which shall be rejected." Williams v. Pilot Life Ins. Co.,288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975).
Finding of fact 15 provides:
Acting upon her belief that the parties were in an adversarial relationship, the Plaintiff on Monday, April 25, 2011 went to Wachovia Bank and withdrew the monies in the parties' joint account without notice to the Defendant and placed the money in a separate account in her name with Wachovia Bank ... and on which the Plaintiff alone had signatory authority. The Plaintiff placed all of the money which she had withdrawn from the parties' joint account into this new account to which the Defendant had no access.
Defendant argues that this finding of fact is unsupported because plaintiff's withdrawal of the monies "was not because of [an] adversarial relationship." Defendant contends that during all of the property discussions, the parties "had a good relationship." However, finding of fact 15 is supported by competent evidence. Plaintiff testified as follows:
PLAINTIFF'S ATTORNEY: After I'll call it Easter weekend, how would you describe your relationship?
PLAINTIFF: Adversarial.
Therefore, there is sufficient evidence in the record for the trial court to find that plaintiff believed the parties to be in an adversarial relationship.
Finding of fact 25 provides:
Because the parties' residence had sold much quicker than they had anticipated, the parties continued to reside in the same dwelling although they had executed a Free Trader Agreement, had agreed to separate, intended to separate, had had disputes over the distribution of money, and were sleeping in separate rooms.
Defendant argues that this finding is unsupported by competent evidence because the parties never had any disputes about the distribution of money. We disagree. We note that defendant does not dispute the fact that the parties executed a Free Trader Agreement, and he freely admits that the parties resided in separate rooms with the intention to separate. Thus, defendant's sole contention is that the parties never disagreed about the distribution of their money. However, there is evidence in the record to support this finding. We note that this case was filed in our Court because defendant takes issue with the distribution of marital assets. Regardless, the finding is supported by the following colloquy that occurred at trial:
PLAINTIFF: [Defendant] said that he realized that I had moved the money to the other account, and I talked to him and told him that I would give him his part of that back if that's what he wanted but that it was in an account in our son's name because I felt like I needed to take care of him.
PLAINTIFF'S ATTORNEY: And what, if anything, did he say then?
PLAINTIFF: He wanted his part of that back.
PLAINTIFF'S ATTORNEY: Okay.
PLAINTIFF: And said also that he would never trust me again.
PLAINTIFF'S ATTORNEY: Why did he say that?
PLAINTIFF: I guess because I had moved the money without his knowledge.
Given this testimony, we hold that there is competent evidence in the record to support finding 25.
Finding of fact 33 provides:
The Defendant contends that the Plaintiff failed to disclose the existence of her retirement account with the State of North Carolina to him and that this omission constituted fraud.
Defendant argues that he was aware of the existence of plaintiff's retirement account. We agree that there is evidence in the record that defendant knew of the retirement account. Nonetheless, defendant's pleadings substantiate this finding. In his answer and counterclaim, defendant alleged in paragraph 35: "The Plaintiff did not disclose to the Defendant the nature and the value of her retirement benefits prior to the signing of the purported separation agreement[.]" Accordingly, finding of fact 33 is supported by competent evidence. Blackwell v. Butts,278 N.C. 615, 619, 180 S.E.2d 835, 837 (1971) ("Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts."). Assuming arguendothat this finding is unsupported, we hold that it has no bearing on the outcome of this case.
Finding of fact 40 provides:
The parties had, by the end of June 2011, agreed upon a distribution of their marital property.
Defendant argues that the parties had not agreed upon how to distribute plaintiff's retirement account by June 2011. Therefore, he contends that this finding is unsupported by the evidence. We disagree.
At trial, plaintiff testified as follows:
PLAINTIFF: We had reached an agreement as to the division and distribution of our property, and I wanted to have something in writing just to protect both of us so that neither one of us could come back in the future and say, I've changed my mind; I want this or I want that.
On 30 June 2011, plaintiff reviewed and signed the Agreement, which plainly stated on its face that it was a "Contract Property Settlement." We hold that finding 40 is supported by competent evidence.
Finding of fact 45 provides:
On June 30, 2011, the Plaintiff called the Defendant on his cell phone and asked him if he would sign the Contract she had prepared as they had agreed on their property distribution and she wanted something saying that the parties had reached an agreement so that no one could come back and later contest their agreement.
Defendant argues that this statement of fact is incorrect because defendant testified he was unaware that plaintiff was asking him to sign the Settlement Agreement; he alleged that he was under the impression that the document was a Free Trader Agreement. While defendant's recollection of the facts may differ from plaintiff's, the trial court is charged with resolving any conflicts in the evidence. See id.Further, "[f]indings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts." Id.This is because the trial court has "the opportunity to see the parties in person and to hear the witnesses, and [its] decision ought not to be upset on appeal absent a clear showing of abuse of discretion." Falls v. Falls,52 N.C.App. 203, 209, 278 S.E.2d 546, 551 (1981) (citations and quotations omitted). Defendant has not demonstrated how the trial court abused its discretion in making this finding of fact after weighing the evidence before it.
Finding of fact 53 provides:
The Defendant actually had the Contract in his hand and nothing prevented him from leaving the Insurance Agency with the Contract, to keep the Contract for further review, or to have the Contract reviewed by any lawyer of his choice.
Defendant argues that this finding is unsupported by the evidence because the parties agreed early in their settlement negotiations not to hire counsel, and defendant believed he was signing a Free Trader Agreement.
Mary Phelps, the notary who notarized the Separation Agreement, testified that defendant reviewed the document in her presence, and nothing prevented defendant from taking the document with him without signing it. Further, the fact that the parties had agreed to proceed without counsel certainly did not preclude defendant from seeking representation at any point during the divorce process. Defendant's argument as to why finding 53 is unsupported by competent evidence is without merit.
Findings of fact 58 and 69 provide:
58. The Plaintiff did not fraudulently engage in any activity which prevented the Defendant from reading the Contract, nor did she engage in any fraudulent inducement to secure the Defendant's execution and signature on the Contract.
69. As a mixed finding of fact and conclusion of law, the Court determines that the Contract was not obtained by fraud, duress, undue influence, or misrepresentation.
Defendant argues that these findings are unsupported by the evidence because the parties were in a confidential, fiduciary relationship when he signed the Separation Agreement, and plaintiff committed a fraudulent act in presenting the contract to defendant. We disagree with defendant.
"During a marriage, a husband and wife are in a confidential relationship. In this relationship, the parties have a duty to disclose all material facts to one other, and the failure to do so constitutes fraud." Lancaster v. Lancaster,138 N.C.App. 459, 462, 530 S.E.2d 82, 84 (2000). However, the confidential relationship ends when the parties to the marriage become adversaries. Id.at 463, 530 S.E.2d at 85. Assuming arguendothat the parties were in a confidential relationship on 30 June 2011, when defendant signed the Separation Agreement, there is no evidence that plaintiff failed to disclose any material facts to defendant or otherwise fraudulently induced his signature. To the contrary-defendant was afforded the opportunity to review the Separation Agreement prior to signing it, and he could have elected to have counsel review its terms. Findings 58 and 69 are supported by the record evidence. These findings are supported by competent evidence.
B. Conclusions of Law
Defendant argues that the trial court erred in declaring that the Separation Agreement is valid because the evidence shows that the parties were in a confidential, fiduciary relationship when the Separation Agreement was signed, and it shows that the Agreement was procured by fraud and the terms were unconscionable. We disagree.
We review the trial court's conclusions of law de novo. Hall v. Hall,188 N.C.App. 527, 530, 655 S.E.2d 901, 904 (2008).
"To be valid, a separation agreement must be untainted by fraud, must be in all respects fair, reasonable, and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties." Lancaster,138 N.C.App. at 462, 530 S.E.2d at 84.
In a marriage, a husband and wife are in a confidential relationship in which they share a duty to disclose all material facts to one other, and the failure to do so constitutes fraud. Daughtry v. Daughtry,128 N.C.App. 737, 740, 497 S.E.2d 105, 107 (1998). "[A] presumption of fraud arises where the fiduciary in a confidential relationship benefits in any way from the relationship." Lancaster,138 N.C.App. at 462, 530 S.E.2d at 84. Should this occur, the burden shifts to the fiduciary to show that the transaction was a voluntary act of the alleged victim. Id.at 462-63, 530 S.E.2d at 85. "Finally, even spouses not in a confidential relationship may not engage in unconscionable behavior when entering into a separation agreement." Id."Unconscionability is both procedural-consisting of fraud, coercion, undue influence, misrepresentation, inadequate disclosure, duress, and overreaching; and substantive-consisting of contracts that are harsh, oppressive, and one-sided." Id.
Defendant argues that he and plaintiff had a confidential relationship when he signed the Separation Agreement, and plaintiff was bound to follow the rules outlined above. Specifically, defendant argues that there was "no evidence that the parties acted as adversaries toward each other." Further, defendant contends that if plaintiff "felt they were adversaries, she had a duty to disclose that to [defendant], which she never did."
We are not persuaded. Although a husband and wife do generally share a confidential relationship, "this relationship ends when the parties become adversaries." Id.at 463, 530 S.E.2d at 85. Although not controlling, evidence that one party has moved out of the marital home supports a conclusion that the confidential relationship has terminated. Id.Similarly, when one party hires legal counsel to initiate divorce proceedings, the confidential relationship is usually over. Id.
Here, plaintiff testified that she believed the parties were in an "adversarial" relationship after deciding to separate on Easter weekend. Further, the evidence shows that unbeknownst to defendant, plaintiff transferred all of the parties' monies from their joint account into an account in her name on 25 April 2011. Although plaintiff returned defendant's share of the monies, such action by plaintiff constitutes evidence of an adversarial relationship. In addition, the parties entered into a Free Trader Agreement on 18 May 2011, which allowed each to buy and sell property as if he/she was unmarried. By the end of May 2011, defendant was under contract on a home purchase that closed on 7 June 2011. Defendant and plaintiff were living separate and apart when defendant signed the Separation Agreement on 30 June 2011.
Based on these facts, the trial court found, and we agree, that the confidential relationship between defendant and plaintiff did not exist when the parties signed the Separation Agreement. Given that there was no confidential relationship between the parties, this Court must next review the transaction "as we would any other bargained-for exchange between parties who are presumably on equal footing." Id.at 464, 530 S.E.2d at 86. "In determining the validity of a separation agreement, we are not required to make an independent determination as to whether the agreement is fair. Absent a showing of any wrongdoing by a party to the agreement, 'we must assume that this arrangement was satisfying to both spouses at the time it was entered into.' " Id.at 464-65, 530 S.E.2d at 86 (quoting Hagler v. Hagler,319 N.C. 287, 293, 354 S.E.2d 228, 234 (1987) ).
Here, the trial court found, and we agree, that there was no evidence of fraud, duress, or undue influence by plaintiff on defendant to sign the Separation Agreement. In addition, we do not find that the Agreement was so inequitable as to be unconscionable. The law in North Carolina is clear: "one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed ... as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained." Williams v. Williams,220 N.C. 806, 809-810, 18 S.E.2d 364, 366 (1942). Thus, defendant had an affirmative duty to read the contract before signing it, which he purportedly failed to do. It is not the role of this Court to make an independent determination as to whether a separation agreement is fair, and it is not invalid merely because one party later decides that what he bargained for is insufficient.
In sum, the parties were not engaged in a confidential relationship when defendant signed the Separation Agreement. Further, there is no evidence that plaintiff secured defendant's signature through the use of fraudulent tactics and there is no evidence that the Agreement's terms were unconscionable. Defendant's contention that the Agreement was procured by fraud and contains unconscionable terms is without merit. Accordingly, we affirm the trial court's order.
Affirmed.
Judges GEER and DILLON concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from order entered 15 August 2014 by Judge Amber Davis in Pasquotank County District Court. Heard in the Court of Appeals 7 May 2015.