Dean **MADLEM**, Appellant–Plaintiff,

v.

Victor **ARKO** and Marla M. **Johnston**,
Appellees–Defendants.

No. 57A04–9011–CV–560.

Court of Appeals of Indiana,
Fourth District.

Dec. 3, 1991.

Robert J. Palmer, E. Spencer Walton, Jr., May, Oberfell & Lorber, South Bend, for appellant-plaintiff.

R. Michael Parker, David G. Thomas, Karla O. Boresi, Barnes & Thornburg, Elkhart, for appellees-defendants.

CONOVER, Judge.

Plaintiff–Appellant Dean Madlem (Madlem) appeals the Noble Circuit Court's judgment in favor of Defendants–Appellees Victor Arko (Arko) and Marla M. Johnston (Johnston) in a negligent notarization case.

Affirmed.

This appeal presents the following issues:

(a) whether the trial court erred by

    1. placing the burden of persuasion regarding the custom and practice of Elkhart County attorneys and notaries upon Madlem,

    2. entering an erroneous conclusion of law as to the custom and practice of Elkhart County attorneys and notaries when notarizing the signatures of strangers upon legal documents,

    3. substituting such custom and practice for the legal standard of reasonableness,

(b) whether the judgment is contrary to law since there is no evidence the notary did anything to ascertain the forger's identity,

(c) whether under respondeat superior an attorney is liable for his secretary-notary's negligence when acting within the scope of her employment, and

(d) whether an attorney breaches his duty to his client in falsely witnessing a forger's signature.

Arko and Johnston, as appellees, raise an additional issue:

(a) whether Madlem's action was time-barred because filed more than two years after his cause of action had accrued.

Madlem and Neil Buck formed a corporation to go into the van conversion business, Madlem to furnish the money and Neil to handle the business details. Madlem initially advanced money to Neil and his wife Judy, receiving a promissory note and mortgage in return as security. This loan was paid off.

Later, Neil needed $26,500 to purchase two van chassis. Madlem advanced the amount requested. When Neil then needed another $8,000 to meet payroll, Madlem refused because the $26,500 was still outstanding. He wanted that loan secured before he would advance the $8,000.

Madlem and Neil retained Arko, an attorney in Elkhart, to prepare the note and a second mortgage on Neil and Judy's home in Michigan, and other transaction-related papers. When the papers were ready, Madlem and Neil met with Arko on June 20 or 21, 1985, to sign the papers. The papers were reviewed and Neil signed the promissory note and mortgage. They were then left with Johnston, Arko's secretary, for notarization. Neil's wife was to come to the office and sign them later.

Neither Arko nor Johnston have any recollection as to the date upon which the forger appeared in Arko's office and forged Judy's signature on the mortgage. However, it had to have occurred sometime after Madlem and Neil had been there. The mortgage and notarization date is of no help because all the papers, including the notarization, had been back-dated to August 20, 1984, at Madlem's and Neil's request. However, the notarized mortgage was recorded by the Cass County, Michigan, Recorder on August 12, 1985.

Although the papers were signed where Neil's wife's signature was to appear and that signature notarized, Judy Buck testified the signature on the mortgage was a forgery. As a result, Madlem's foreclosure suit against Neil's Michigan home failed although judgment on the note against Neil only was entered in his favor. He then filed suit against Arko and Johnston for negligent notarization on March 4, 1988.

Johnston testified she couldn't specifically remember this notarization transaction, but it was her practice never to notarize a document in blank. Someone always had to sign the document in question before she would notarize it. However, she did not

require identification from persons whom she did not know. She did not know Neil's wife.

Madlem appeals from an adverse judgment.

■ Because there would be no need to discuss appellant's issues if his case is time-barred under the applicable statute of limitations, we deem it advisable to discuss the appellees' issue first.

Arko and Johnston assert Madlem's action against them was time-barred at the time he initially filed it because the complaint was filed more than two years after his cause of action against them had accrued. To the contrary, Madlem asserts he did not know he had been damaged by appellees' alleged negligence until Neil and his wife filed an affirmative forgery defense in the Michigan foreclosure action. Thus, he claims his complaint was timely filed because he filed it within two years after learning of the forgery from the affirmative defense Neil and Judy filed in the foreclosure action. The trial court was persuaded by this argument and overruled appellees' motion for summary judgment below.

Arko, an attorney, relies upon the case of *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281, and Johnston, a notary public, cites *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144, 1149, pertaining to real estate brokers, as precedent by analogy for notaries public. Madlem, in turn, relies on *Burks v. Rushmore* (1989), Ind., 534 N.E.2d 1101, claiming that case "specifically rejected the rationale whereby the Supreme Court refused to apply the discovery rule in *Shideler v. Dwyer, supra.*" (Appellant's Reply Brief, at 24). Discussion of these cases is appropriate.

In *Shideler*, a case involving attorney malpractice in preparing a faulty bequest in a will, the majority said:

... For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred.... 'the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.' (Citing cases).

*Shideler*, 417 N.E.2d, at 289. The *Shideler* court held the cause of action accrued when testator died, even though the beneficiary did not know the bequest was void until a court so ruled 18 months later. The complaint against the lawyer and her firm, filed one day shy of that ruling's second anniversary, was filed too late, the majority held. The two year statute of limitations had already run.

*Burks* was a defamation case wherein Burks claimed he was defamed in a memorandum circulated to three Indiana Bell Telephone employees by Rushmore, an employee in charge of supervising the company's employee disability leave programs. Burks claimed as a result of the memo, he was ordered to take a new job. He refused because it increased the risk to his handicap. *Burks*, 534 N.E.2d, at 1103. Burks first learned of the memo six months after he refused the new job, but filed suit within two years of his learning of its existence. That filing, however, was more than two years after Rushmore circulated the memo. Burks got a copy of it only by discovery after filing suit. A unanimous supreme court held

The pre-existing general rule acknowledged in *Barnes v. A.H. Robins Co., Inc.* (1985), Ind., 476 N.E.2d 84, that the statute of limitations begins to run upon ascertainability of actionable damage, provides the proper basis for resolution of *the present case*. Thus, the statute of limitations applicable to Burks commenced to run when resultant damage was ascertained or ascertainable by due diligence. (Emphasis supplied).

*Id.* at 1104.

*Barnes*, a Dalkon Shield case, answered a certified question from the Seventh Circuit Court of Appeals. The question was when, under Indiana law, does a cause of action for personal injury accrue for stat-

ute of limitation purposes if the injury involved is caused by a disease which may have been "contracted as a result of protracted exposure to a foreign substance?" *Barnes,* 476 N.E.2d, at 85.

The Barnes court answered the Seventh Circuit's inquiry by adopting "a discovery type" rule, i.e., one which provides that "the statute of limitations in this type of cause runs from the date the negligence was or should have been discovered." *Id.,* at 86. However, it severely limited the discovery rule's application after acknowledging the Supreme Court of Wisconsin had responded to a similar query by adopting a discovery type rule in *all* tort cases. Our supreme court said:

> In responding to the certified question *we do not see it proper for us to respond to all tort claims,* as Wisconsin did, for that would be going beyond the scope of the inquiry and put us in the position of issuing an advisory opinion. Therefore, *we limit our finding here to the precise factual pattern related by the certified question* which is an injury to a plaintiff caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance. We find that *in those circumstances, a discovery type rule should be applied,* and the statute of limitations in such causes commences to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." (Emphasis supplied).

*Id.,* at 87–88. Additionally, both *Burks* and *Barnes* cite but do not overrule *Shideler* and its teachings. Since both cases carefully limit their holdings to the facts before them, and *Shideler* has been precedent of long standing, the rule in *Shideler* constitutes precedent here because it concerns professional negligence resulting only in property damage.

■ The rule in *Shideler's* case is: A cause of action for professional negligence accrues for limitation of action purposes when liability for that negligence attaches whether or not the complainant knows or

should know of the resulting damage. *Shideler,* 275 Ind., at 282, 417 N.E.2d, at 289–90; *Craig,* 509 N.E.2d, at 1149. In other words, the statute begins to run when the act or omission results in damage. *Johnson v. Cornett* (1985), Ind.App., 474 N.E.2d 518, 519, *reh. denied, trans. denied.* The next question is when did Madlem's cause of action accrue against Arko and Johnston?

The appellees contend Madlem's cause of action accrued at the precise time the forger signed the mortgage on Judy A. Buck's signature line and it was notarized as being hers. We agree.

Her signature was forged and notarized at the latest on August 5, 1985, the date the executed mortgage was recorded by the Cass County, Michigan, Recorder. Had the signature been authentic, Madlem's lien against the Bucks's real estate would have arisen at the precise moment Judy signed it. Because the signature was forged, Madlem's cause of action against Arko and Johnston accrued at that time, instead. Since the evidence does not disclose the date that event happened, the last provable date the cause of action would have accrued against Arko and Johnston was August 5, 1985, the recording date. Because Madlem filed his action against appellees on March 4, 1988, it was time-barred under IND.CODE 34-1-2-2. That statute provides, in pertinent part

> Sec. 2. The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:
>
> (1) For injuries to person or character, for injuries to personal property, ... within two (2) years.

Madlem's action was filed ten months too late, and the trial court erred by not sustaining appellees' motion for summary judgment.

■ However, we will affirm the trial court if it reaches the right result, but for the wrong reasons. *Hurst v. Board of Com'rs of Pulaski County* (1985), Ind., 476 N.E.2d 832, 834; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157. The judgment below was entered in favor of

Arko and Johnston, the same result as would have occurred had it granted them summary judgment.

Affirmed.

RATLIFF, C.J., concurs.

MILLER, J., concurs in result with separate opinion.

MILLER, Judge, concurring in result.

I concur in the result of the majority opinion but disagree with the majority's finding that Madlem's claim was time barred. The majority states that the rule in *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281, is that "[a] cause of action for professional negligence accrues for limitation of action purposes when liability for that negligence attaches whether or not the complainant knows or should know of the resulting damage." At 1293. This conclusion overlooks the fact that in *Shideler*, the court based its decision not to apply the discovery rule in part on the fact there was no attorney/client relationship between Dwyer, an intended beneficiary under a will drafted by Shideler, and Shideler, the attorney. Further, the *Shideler* court recognized that application of the discovery rule might be warranted in some cases.

Here, unlike in *Shideler*, there is an attorney/client relationship. Courts from other jurisdictions have held that the special nature of the relationship between attorney and client justifies application of the discovery rule to attorney malpractice claims brought by the client. *See, e.g., Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill.App.3d 455, 304 N.E.2d 677. In *Kohler*, the Illinois Court of Appeals explained that in cases of attorney malpractice, as well as in cases of malpractice by other professionals,

"postponement of the period of limitation until discovery finds justification in the special nature of the relationship between the attorney and his client.... [A] client may not recognize the negligence of the professional when he sees it, and if he must ascertain malpractice

at the moment of its occurrence, the client must hire a second professional to check the work of the first, which would be an impractical duplication and would destroy the confidential relationship between the practitioner and his client."
*Id.*, 304 N.E.2d at 680, citing *Neel v. Magana* (1971), 6 Cal.3d 176, 491 P.2d 421, 98 Cal.Rptr. 837.

If Judy Buck's signature was in fact forged, Madlem had no way to know it until he tried to foreclose on the mortgage and the defense of forgery was successful. He hired Arko to prepare the mortgage and had a right to assume that it would be properly executed. However, the majority—by finding that Madlem's cause of action accrued against the attorney and his secretary Johnston when the forged mortgage was recorded—puts the burden on Madlem to duplicate the work which he hired Arko to do.

Although our supreme court refused in *Barnes v. A.H. Robins* (1985), Ind., 476 N.E.2d 84, to apply the discovery rule to all tort claims, the court did not foreclose its application to situations other than the one which arose in *Barnes*. In fact, the court stated that the discovery rule is applicable in cases where, as here, a wrong has occurred and a claimant could not be aware that a cause of action exists. The court explained:

"The [discovery] rule is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists. In the typical tort claim, injury occurs at the time the negligent act is done and the claimant is either aware of the injury, or at least the cause of the injury, and is put on notice to determine the extent of that injury. The claimant, therefore, has the whole statutory time provided for in the limitations statutes to make his determinations and bring his cause of action. The problem comes about when the act, seemingly innocent, causes changes so subtle and latent that they are not discoverable to

the plaintiff until they manifest themselves many years later."

*Id.* at 86.

Therefore, I would hold that Madlem's cause of action against Arko and Johnston did not accrue until he knew or should have known that Judy Buck's signature on the mortgage and note was a forgery—in this case, when he attempted to foreclose on the mortgage. However, I would nonetheless affirm the decision of the trial court.

Here, the trial court entered specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52. Madlem does not argue the trial court's findings of fact were not supported by the evidence; rather, he argues the court's conclusions of law and judgment are clearly erroneous. By attacking only the conclusions of law and judgment, Madlem is arguing that the trial court reached an erroneous conclusion of law from the facts as found. *See Farmers Mutual Insurance Co. v. Wolfe* (1968), 142 Ind.App. 206, 233 N.E.2d 690. Further, by not challenging the court's findings, Madlem is bound by the findings of fact as being fully and correctly found by the trial court. *Id.; Registration & Management Corp. v. City of Hammond* (1972), 151 Ind.App. 471, 280 N.E.2d 327. Thus, our review is limited to whether the conclusions of law and judgment were erroneous based on the facts as found by the trial court. The judgment of the trial court will be reversed only if it is clearly erroneous. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Lueth v. Gardner* (1989), Ind.App., 541 N.E.2d 298.

Madlem alleged attorney Arko and secretary Johnston were negligent for failing to obtain proper execution of the note and mortgage. As in any other negligence action, the burden was on Madlem to show 1) duty—that he employed Arko and Johnston; 2) that they failed to exercise reasonable care; 3) causation; and 4) loss. *Schneider v. Wilson* (1988), Ind.App., 521 N.E.2d 1341.

Madlem alleged—and asserts here on appeal—that Judy Buck's signature on the note and mortgage was forged and that Arko and Johnston were negligent in allowing such a forgery. Therefore, the burden was on Madlem initially to show that the documents were indeed forged. If Madlem had proven that the documents were forged, the burden would have shifted to Johnston to establish the veracity of the signature or that she used reasonable care and skill in making her certificate on the document. 58 Am.Jur.2d *Notaries Public* § 66 (1989). However, I have searched the court's findings of fact and conclusions of law and find no indication that the trial court did in fact determine that a forgery had occurred. Buck testified she did not sign the papers; however, the judge was not required to believe her testimony—he could have determined that her testimony was self-serving and, therefore, not believable. In any event, there was no finding Buck's signature was forged. Because Madlem does not challenge the findings on appeal, we must accept them as being fully and correctly found. Therefore, Madlem failed to establish that Arko and his secretary breached the duty of care owed to him. Thus, I would affirm the decision of the trial court.