## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2019, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of S.D. (Child) and L.V. (Father);

L.V. (Father),

*Appellant-Defendant,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

July 19, 2019

Court of Appeals Case No. 18A-JT-2973

Appeal from the Vigo Circuit Court

The Honorable Sarah K. Mullican, Judge

The Honorable Daniel W. Kelly, Magistrate

Trial Court Cause No. 84C01-1806-JT-658

**May, Judge.**

[1] L.V. ("Father") appeals the termination of his parental rights to S.D.[1] Father raises two issues, which we restate as: (1) whether Father's due process rights were violated by procedural deficiencies during the Child in Need of Services ("CHINS") case that hindered Father's opportunity for reunification; and (2) whether the trial court's judgment terminating Father's parental rights was clearly erroneous because the Indiana Department of Child Services ("DCS") failed to prove termination of Father's parental rights was in S.D.'s best interests. We affirm.

# Facts and Procedural History

[2] S.D. was born on April 9, 2015. On April 7, 2017, S.D. was removed from Mother's care when Mother was arrested for probation violations. At the time of removal, the identity of S.D.'s biological father was not known. Father requested a DNA test to establish he was S.D.'s biological father. Prior to that determination, DCS filed a petition asking the court to declare S.D. a CHINS.

[3] On April 18, 2017, Mother admitted S.D. was in need of services due to her incarceration. On June 1, 2017, DCS received the DNA results and informed Father that he was S.D.'s biological father. On June 20, 2017, the court held a factfinding hearing and concluded S.D. was a CHINS for two reasons: (1)

---

[1] Mother voluntarily terminated her parental rights, and she does not participate in this appeal.

Father was a noncustodial parent and was therefore unable to protect S.D.; and (2) Mother admitted S.D. was a CHINS.

[4] On January 2, 2018, the court ordered Father to participate in services, including regular supervised visits with S.D., case management participation to obtain stable employment and transportation, weekly contact with the Family Case Manager, random drug screening, and any recommendations for addiction treatment.

[5] On June 14, 2018, DCS filed its petition for involuntary termination of parent-child relationship. On June 20, 2018, DCS moved to modify the dispositional decree to discontinue Father's services and visitation because Mother had voluntarily terminated her parental rights, Father continued to test positive for illegal drugs, Father did not engage with S.D. during visits, and Father failed to maintain contact with DCS for approximately two months.

[6] On August 3, 2018, the court took the matter under advisement and informed Father that if he failed any drug screens, failed to show for any drug screens, or missed any scheduled visits with S.D., the court would grant the requested modification. On August 15, 2018, DCS informed the court that Father failed to follow the Court's order because Father's random drug screen tested positive for THC and cocaine. On August 17, 2018, the court ordered DCS was no longer required to pay for or offer services to Father due to his positive drug screen.

[7] On October 9, 2018, the court held a hearing on DCS's petition for involuntary termination of parent-child relationship. On November 13, 2018, the court permanently terminated all rights, powers, privileges, immunities, duties, and obligations pertaining to the parent-child relationship between Father and S.D.

# Discussion and Decision

## Procedural Arguments

[8] Father claims his right to due process, under both the federal and state constitutions, was violated because of numerous procedural deficiencies in this case that hindered Father's opportunity for reunification. However, the record does not demonstrate that his claims were raised at any time during the underlying CHINS proceedings. "At a minimum, a party must show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal." *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004). Because Father raised his due process arguments for the first time on appeal, they are waived. *In re S.P.H.*, 806 N.E.2d 874, 877-78 (Ind. Ct. App. 2004). Waiver notwithstanding, Father's alleged issues are unavailable for appeal.

[9] First, Father challenges the services provided by DCS:

> A. Why was S.D. not allowed to remain in Father's care at the inception of this case?
> B. Why, despite the lack of any evidence that Father abused or neglected S.D., was Father only allowed two brief supervised visits per week with S.D?

C. Finally, and perhaps most troubling, why did DCS wait over 8 months to put a referral in place for Father to begin substance abuse evaluation and treatment?

D. Why, despite being required by law to do so, did DCS never initiate a paternity action on S.D.'s behalf to legally establish paternity?

(Appellant's Br. at 2) (some formatting omitted).

[10] Our Indiana Supreme Court has long recognized that, in "seeking termination of parental rights," DCS has no obligation "to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations." *S.E.S. v. Grant Cty. Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind. 1992). Likewise, we have stated on several occasions that, although "DCS is generally required to make reasonable efforts to preserve and reunify families during the CHINS proceedings," that requirement under our CHINS statutes "is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *A.Z. v. Ind. Dep't of Child Servs.* (*In re H.L.*), 915 N.E.2d 145, 148 & n.3 (Ind. Ct. App. 2009) (citing I.C. § 31-34-21-5.5); *see also Elkins v. Marion Cty. Office of Family & Children* (*In re E.E.*), 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal"); *Stone v. Daviess Cty. Div. of Children & Family Servs.*, 656 N.E.2d 824, 830 (Ind. Ct. App. 1995) ("under Indiana law, even a complete failure to provide services cannot serve as a basis to attack the termination of parental rights"), *trans. denied*.

[11]    Nor do we find merit in Father's attempt to discredit the termination order by attacking the services provided by DCS. Father did not ask for S.D. to remain in his care at the inception of the case, and Father did not ask for more visits per week with S.D. Regarding the substance abuse evaluation and treatment referral, it is well settled that "a parent may not sit idly by without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). Father cannot raise this argument when he did not request substance abuse treatment.

[12]    Next, while the court did not issue an order mandating DCS initiate paternity proceedings, it advised Father that DCS could instruct him on how to file a petition. The court also instructed Father about how to establish paternity. (CHINS Tr. Vol. VI at 10, 14.) Father failed to establish his paternity of S.D. sooner; he cannot now allege that as error on appeal. *See Herron v. Herron*, 457 N.E.2d 564, 569 (Ind. Ct. App. 1983) ("a party may not take advantage of an error which he commits, invites, or which is the natural consequence of his own neglect or misconduct").

[13]    Finally, Father challenges S.D.'s placement after establishment of his paternity, arguing: "Once Father proved he was S.D.'s biological father, why was S.D. not placed in his care?" (Appellant's Br. at 2.) However, the record reveals that Father did not want to get involved with the case until paternity was established. (Ex. Vol. at 63, 77; TPR Tr. Vol. II at 16; CHINS Tr. Vol. I at 5-6.) After paternity was established, no evidence in the record shows Father

requested S.D. be placed into his care. Father should have requested S.D. be placed with him if that was his desire. We cannot fault DCS for not considering placing S.D. in Father's care when Father did not so request. *See C.T. v. Marion Cty. Dep't of Child Servs.*, 896 N.E.2d 571, 588 (Ind. Ct. App. 2008) ("In failing to respond to his attorney's letters or to communicate with his attorney prior to the termination hearing, despite his actual knowledge of the hearing, [Parent] has invited the alleged error of which he now complains."), *trans. denied.*

[14] We find no merit in any of Father's allegations that he was deprived of due process during the CHINS proceedings.

## Child's Best Interests

[15] Next, Father questions whether DCS presented sufficient evidence to prove that termination was in S.D.'s best interests. DCS filed a petition to terminate Father's parental rights.

> A petition to terminate a parent-child relationship must allege:
> (A) that one (1) of the following is true:
>     (i)    the child has been removed from the parent for at least six (6) months under a dispositional decree.
>     (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>     (iii)    The child has been removed from the parent and has been under the supervision of a county office of a family and children or probation department for at least fifteen (15) months of the most recent twenty-

two (2) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) That termination is in the best interests of the child; and

(D) That there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[16] "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." *Id.* (quoting Indiana Trial Rule 52(A)).

[17] Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. *Id.* "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." *Id.* We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the

judgment. *Id.* Father does not challenge any of the trial court's findings, and thus they stand proven. *Madlem v. Arko*, 581 N.E.2d 1290, 1295 (Ind. Ct. App. 1991). Father asserts only that DCS failed to prove that termination of his parental rights was in S.D.'s best interests.

[18] Pursuant to Indiana Code section 31-35-2-4(b)(2)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[19] Father bases his argument on the fact that he has a loving bond with S.D., that S.D. recognizes him as "dad," and that he did most of what DCS required of him. (Appellant's Br. at 20.) However, we are not persuaded those facts are enough to reverse the termination of his parental rights as to S.D. Father submitted a number of drug screens, all of which were positive for illegal substances such as marijuana, cocaine, and methamphetamine. (Tr. Vol. II at 7.) In order to "see if motivation to engage in [substance abuse] treatment and make changes could be elicited," (*id.* at 34), Father was recommended for

motivational interviewing, but he refused to participate. (*Id*. at 49.)

Subsequently, at the time of the fact-finding hearing, Father was incarcerated

with pending charges for Level 2 Felony dealing in methamphetamine,[2] Level 4

Felony possession of methamphetamine,[3] and three other counts. Those

pending charges were in addition to his lengthy criminal history, including

charges for which he had served time. The trial court found:

> d. There is reasonable probability that the conditions which
> resulted in the removal of the child from his parents will not be
> remedied or the reasons for placement outside of the home of the
> parents will not be remedied or that the continuation of the
> parent-child relationship poses a threat to the well-being of the
> child as follows:
>
>   1. On or about April 7, 2017, DCS received a report that
>      Mother was in the Vigo County Jail, Father of the children
>      was unknown, that [A.D.], a sibling of [S.D.'s], had been
>      taken from Mother and was in kinship placement and that
>      Mother had been hiding [S.D.] from DCS for the previous
>      two months. The reporting person was concerned about
>      [S.D.'s] well-being and did not know in whose care he had
>      been placed.
>
>   2. Father was recommended for motivational interviewing,
>      in hopes of supplying him with motivation to participate in
>      substance abuse treatment, which he was refusing to do.

---

[2] Ind. Code § 35-48-4-1.1 (2017).

[3] Ind. Code § 35-48-4-6.1 (2014).

3. Father submitted to a number of drug screens, usually on the day of his supervised visits with [S.D.]. All of them were positive for illegal substances, most often marijuana and cocaine, but was [sic] also positive for methamphetamine.

4. Father has a lengthy criminal history, for which there was evidence from DCS and the court's judicial notice, including the following:

[Father's Criminal History includes: one cause possession of cocaine and marijuana; one cause possession of marijuana, resisting law enforcement, and battery resulting in bodily injury; one cause three counts dealing cocaine within 1000 ft of school; one cause operating vehicle without ever receiving license; one cause two counts resisting law enforcement, driving while suspended, and battery; one cause battery; one cause domestic battery; two causes invasion of privacy; one cause operating without ever receiving license, and open alcoholic beverage container during operation of a motor vehicle; one cause domestic battery with enhancement, and domestic battery; one cause three counts theft; one cause conversion; one cause failure to stop after accident causing damage to non-vehicle, operation of vehicle without ever receiving a license, and failure to stop after accident with unattended vehicle; one cause operation without ever receiving license; one cause false informing, and possession of marijuana; one cause domestic battery, and refusal to be photographed when taken into custody; one cause operation without ever receiving a license, operation without proof of financial responsibility, and improper plates; one cause domestic battery in presence of child under 16, felony intimidation, and two counts domestic battery; one cause domestic battery in presence of child under 16, domestic battery, and domestic battery with

prior conviction; one cause driving while suspended with prior conviction, operation of vehicle without ever receiving license, and speeding; one cause possession of marijuana; and one cause driving while suspended.]

5. Despite his lengthy criminal history, with criminal cases pending and the pending petition for involuntary termination of the parent-child relationship, Father was arrested yet again on or about September 21, 2018 and was charged with the following charges, which are pending:

Ct. 1: Dealing in meth, more than 10 grams, F2;
Ct. 2: Poss of meth, bt 10-28 grams, F4;
Ct. 3: Maintaining common nuisance, F4;
Ct. 4 Resisting law enf. with vehicle, F6;
Ct. 5 Poss meth bt 10-28 grams, F3

6. Father's continuous criminal arrests and incarcerations render him an unsuitable caregiver and unlikely to be consistently available to care for [S.D.].

*****

f. Termination is in the best interests of the minor child as testified to by DCS and CASA. [S.D.] is placed with a sibling with whom he has a close and loving relationship. The placement seeks to adopt both children.

(Appellant's App. Vol. II at 45-48.)

[20] Father's criminal history and pending charges make it difficult for us to believe Father's termination of parental rights was not in S.D.'s best interests when the trial court evaluated "the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *J.C.K. v. Fountain Cty. Dep't of Public Welfare*, 470 N.E.2d 88, 92 (Ind. Ct. App. 1984) (citing *In re Perkins*, 352 N.E.2d 502, 519 (Ind. Ct. App. 1976)). In light of Father's

continuing problems with criminal behavior and substance abuse, along with the testimony of the CASA that termination was in S.D.'s best interests, we affirm the trial court's determination. *See J.C.K.*, 470 N.E.2d at 93 (stating termination of parental rights was in the best interest of children and not erroneous because there was no evidence of a change in parent's way of life that would ensure a solid home and family life for children).

# Conclusion

[21] We conclude the trial court did not violate Father's due process rights hindering Father's opportunity for reunification. Also, the trial court's judgment terminating Father's parental rights was not clearly erroneous because DCS proved that termination of Father's parental rights was in S.D.'s best interests. Accordingly, we affirm.

[22] Affirmed.

Mathias, J., and Brown, J., concur.